### THE ATCHISON, TOPEKA & SANTA FÉ RLD. CO. v. A. D. STARKWEATHER.

CONTRACT, *in Compromise of Disputed Rights, Valid; Statement of Facts, When Conclusive.* S. being in possession of a tract of land, which he claimed was public land, and which he was seeking to enter under the homestead laws of the United States, brought this action against the railroad company to quiet his title. It appeared that the defendant claimed this land by virtue of its land grants, and that upon a controversy between him and it before the land officers of the United States, including the secretary of the interior, the land had been awarded to it and a patent issued therefor. After the issue of the patent and with full knowledge of all the proceedings in the controversy, S. being unable, for want of funds, to carry on further litigation, went to defendant and made an agreement to buy the land from it, paying part of the price and executing a contract of purchase, which contract contained a full recognition of the company's title, a statement of the terms of sale, a promise to make the deferred payments, and upon failure thereof to surrender the land to the company. *Held—*

1st, That such a contract, having been made in compromise of disputed rights, was valid and binding.

2d, That the parties having with full knowledge contracted upon the basis of certain concessions and admissions of fact, the courts in a subsequent controversy between the parties will not inquire into the truth of those concessions and admissions, but will take that to be true which parties have conceded and admitted to be true.

3d, That whether the title of the company to the land be absolutely perfect or not, if it was good enough for the plaintiff to purchase it is too good for the courts to cancel at his instance.

### Error from Marion District Court.

ACTION brought by *Starkweather* against *The Atchison, Topeka & Santa Fé Railroad Company*, to quiet his title to certain real estate in Marion county, Kansas. At the June Term, 1877, of the district court, the plaintiff obtained a decree in his favor, as follows: "That the title and possession of the said Asa D. Starkweather, to all and singular the premises in his petition described, to wit, the northwest quarter of section 35, town 19, range 3, east of principal meridian, in Marion county, Kansas, be and the same are hereby quieted as against said defendant, *The Atchison, Topeka & Santa Fé Railroad Company*, and all persons claiming under it; and said defendant, and all persons claiming under it, are hereby forever enjoined from setting up any claim to said premises adverse to the title and possession of said plaintiff, or in any manner interfering with his use and enjoyment of the same." The defendant brings the case here for review. The facts are fully set forth in the opinion.

*Ross Burns,* and *J. G. Waters,* for plaintiff in error.

*Frank Doster,* and *John V. Sanders,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Action to quiet title. Plaintiff was in possession, claiming the land under the homestead laws of the United States. Defendant claimed the land under the grants in aid of its road. The facts upon which the parties based their respective claims, were found by the court and are set

out in full in the record.   Upon them counsel on each side
have presented to our consideration extended and able argu-
ments.   We have examined those arguments, and find the
question as to which has the better right to the land one of
no little doubt and difficulty.   We have not decided the
question — indeed, we may say, we have not come to any sat-
isfactory and definite conclusion thereon in our own minds —
for a decision thereof in favor of the plaintiff would not, as
we regard the other matters in the case, entitle him to any
relief, and the defendant prays nothing but a judgment for
costs.   Those other matters appear from the following find-
ings:

18.  That the plaintiff and the defendant had a controversy
pertaining to their respective rights to the land in controversy,
before the commissioner of the general land office, and the
various departments, including the secretary of the interior,
and that the said controversy was finally decided in favor of
the defendant, and to whom was issued the patent for said
land.

19.  That at the time plaintiff made the contract hereinafter
found to have been made, the defendant was then the holder
of the legal title to the land in controversy, it being the grantee
in the patent for the same.

20.  That in February, 1873, the defendant advertised the
land in controversy for sale.

21.  That on June 9th, 1873, the plaintiff, in order to pre-
vent the land from being sold, and being unable for want of
means to prosecute his cause, went to the agent of the defend-
ant and entered into a written contract with the defendant,
whereby he agreed to purchase the land in controversy.   A
true copy of said contract is attached to the petition as a part
thereof, and which is hereby referred to.

22.  That the wife of the plaintiff did not join in making
said contract.

23.  That the plaintiff made said contract with a full knowl-
edge of all the proceedings had in the controversy between
him and the defendant in the department of the interior, and
with a full knowledge that the said land had been awarded
to the defendant.

The contract referred to in the 21st finding, recited the
sale, the receipt of part of the purchase money, and the times

of the subsequent payments; contained a promise on the part of the purchaser to punctually make such deferred payments, an agreement on the part of the company to make a deed upon full compliance with all the conditions of the sale, and a stipulation that upon default by him, the title should revert to the company; that it should have the right to reënter and take possession, and that he should surrender to it the premises without delay, and that no court should relieve him from a failure to comply strictly with the contract. It also provided for a reduction of payments in case of the cultivation of the land. This contract was signed by both parties.

Now, conceding all that plaintiff claims concerning his title and interest in the land, and it amounts to only this: That the land was public land, and subject to homestead entry; that his homestead entry thereof was valid and regular, and that upon his compliance with the terms of the homestead law, he would become entitled to a patent; that the award of the land by the land department to the defendant was unauthorized by law and based upon an erroneous construction of the various provisions of the grants and other statutes of the United States, and that the patent based thereon was issued improperly and without warrant of law. In other words, he had an equitable interest which might be made to ripen into a full equitable title, while the company on the other hand held but the naked legal title. With full knowledge of these respective rights and titles, and of the further fact that in a controversy before the officers primarily authorized to examine and decide upon the conflicting claims of himself and the company to the land, they had decided against him and in favor of the company, he makes this contract of purchase. Without the means to carry on further litigation, he contracts to purchase the antagonistic title. He agrees with the owner of that title as to the price, pays a portion thereof and promises to pay the balance, invites such owner to unite with him in a contract which contains a full recognition of the validity of such title, and a covenant to surrender the land upon the non-performance of his promise

to pay the balance of the stipulated price. May he now come into a court of equity and obtain a decree canceling and destroying the title which he has thus contracted to purchase? We think not. The contract was valid and binding upon both parties. It was a compromise of contesting claims, the termination of litigation and the purchase of an outstanding and rival title. It will not do to say that the plaintiff had the better right; that it was the duty of the defendant, having only a naked legal title, and holding the same simply in trust for the owner of the full equitable title, to convey the same to such owner, and that therefore a conveyance, or promise to convey, was no consideration for a promise on the part of such owner, for the plaintiff was not in fact the owner of the full equitable title and might never become such, and again and chiefly after a compromise, made with full knowledge and without fraud or deception, of a *bona fide* controversy, the courts will not inquire which of the two contestants had the better right. It is enough that they had a controversy and have settled it, and the fact of the dispute upholds the settlement and its various stipulations. Upon such a settlement the court does not inquire what the facts really are. It accepts the statements which the parties have made as conclusive upon them: "When it can be collected from the deed that the parties to it have agreed upon a certain admitted state of facts as the basis on which they contract, the statement of those facts, though only by way of recital, estops the parties from proving the contrary." (Herman on Estoppel, p. 234.)

*Marginal note:* Contract, in compromise of disputed rights, is valid.

In *Moore, et al., v. Fitzwater,* 2 Randolph (Va.), 442, the parties had a controversy as to a tract of land, and in settlement thereof, one agreed to purchase from the other. After a partial payment of this purchase money, the purchaser brought his suit to enjoin the collection of the unpaid and recover the paid purchase money, on the ground that the vendor had in fact no title. Relief was refused, and in refusing it, the court say:

"Whether the title at the time of the contract really was

in the appellants or the appellee, we do not deem it material to inquire. It is sufficient that the *parties themselves* have settled the question; and as there was no fraud or undue advantage, we would not now disturb it even if assured that Moore and McClung had no title."

In the case of *Penn v. Lord Baltimore,* 1 Vesey, Sr., 444, Lord Hardwicke said:

"The settlement of boundaries, and peace and quiet, is a mutual consideration on each side, and in all cases make a good consideration to support a suit in this court for settling boundaries."

In *Cann v. Cann,* 1 P. Wms. 727, Lord Macclesfield said:

"Where two parties are contending before this court, and one releases his pretensions to the other, there can be no color to set aside this compromise because the man that made it had a right; for, by the same reason, there can be no such thing as compromising a suit, nor room for any accommodation. Every release supposes the party making it to have a right; but this can be no reason for its being set aside, for then every release might be avoided."

In *Stapilton v. Stapilton,* 1 Atk. 1, Lord Hardwicke said:

"An agreement entered into upon the supposition of a right or of a doubtful right, though it after comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on one side or the other; and therefore the compromise of a doubtful right is a sufficient foundation for an agreement."

In the case of *Fitch, et al., v. Baldwin,* 17 Johns. 161, it appeared that the parties claimed title to the same tract of land, under two patents, respectively. The defendant deeded to the plaintiff in settlement of the litigation, by deed with covenant of seisin. Plaintiff thereafter brought his action on such covenant to recover the consideration money expressed in the deed, and it was held that he could not recover, the court saying, that "it never can be permitted to a person to accept a deed with covenants of seisin, and then turn around upon his grantor and allege that his covenant is broken, for that, at the time he accepted the deed, he himself was seized of the premises." See also, *Beebe v. Swartwout,* 3 Gil. 162;

*Furness v. Williams, Adm'r*, 11 Ill. 229. In the case of *Jackson v. Ayers*, 14 Johns. 224, the defendant, while in possession, entered into an agreement to purchase the land of plaintiff. Failing to comply with his agreement, the plaintiff brought ejectment, and upon the trial, the defendant offered to prove an outstanding title purchased by himself, and the testimony was rejected. The court says:

"The agreement entered into for the purchase between plaintiff and defendant, was dated in the year 1810. This agreement to purchase was an acknowledgment of the title of plaintiff, and would estop the defendant from setting up an outstanding title. The defendant being in possession when the agreement was entered into, could make no difference. He was in as a mere naked possessor, and must be considered in the same light as if he had entered under the agreement."

It may be questioned whether this case does not carry the doctrine of estoppel farther than it will legitimately go, and also whether the decision in the case from 17 Johns., *supra*, would not rest more satisfactorily on the effect to be given to a compromise of disputed titles, than upon the acceptance of the deed. But they serve to show to what extent courts have gone in this direction. See further upon the effect of a compromise of disputed rights, *Scott v. Warner*, 2 Lansing, 49; *Downer v. Church*, 44 N. Y. 647; *Pitkin v. Noyes*, 48 N. H. 294; and upon the matter of estoppel, *Lessee v. Rochester*, 7 Wheat. 543; *Ward v. McIntosh*, 12 Ohio St. 237; Bigelow on Estoppel, p. 293, and notes. Upon the two propositions that a compromise of disputed rights is binding, no matter upon which side the right may in fact be, and that where in such a compromise the parties agree upon a certain statement of facts as the basis of their contract, Statement of facts, when conclusive. the courts will accept such statement as conclusive between them, it seems to us that the plaintiff must be denied any relief. Counsel argue that the company's title must be *absolutely* good, either by virtue of its patent or by estoppel on the real owner, or else it is subject to cancellation in this suit. They say:

"How, then, can it be said that the act of Mr. Stark-weather in recognizing the title of the railroad company to the tract of land in dispute, by purchasing it, can estop him from setting up his prior and existing title, derived under a law of congress, and expressly recognized and reserved in the law under which the railroad company claims? It is true, that a title can be founded on an estoppel, but not a title from government by a mere estoppel upon a private citizen. The company must show a title to the land derived from government, and not one that we have sold or given to it. No title from the government can be created by the estoppel of an individual. No original inceptive title can be created by estoppel. The first conveyance from the original source of authority must be by grant from the sovereign. It cannot be created by prescription, for 'no time runs against the state.' It cannot be created by estoppel, because it must be by grant from the legislature. The position of the railroad company is, that we recognized its title by our purchase from it, and that we are now forbidden to say that it had no title; or in other words, that we surrendered to it whatever title we had when we made the purchase. If the rights of no one save the parties were involved in this controversy, it would possibly be as it says, but we had no title to give to it. We had a title to ourselves; but it was that which by the spirit and policy of our public-land legislation we could neither convey nor incumber. The title to the land was in us for the purpose of a government homestead, and none other. Will it be contended that, having a valid homestead entry on the land, we could have sold to the railroad company the full, absolute legal title? By no means!

"How, then, could we have surrendered the same legal title to it by renouncing our rights and agreeing that they were vested in it? We might have relinquished to another homestead party, but we could only surrender to him the possession, and he could only take possession because he possessed the qualifications of a homestead claimant, and because the land was legally subject to homestead entry; but we could not convey the legal title, nor any title at all, nor surrender the possession to the railroad company, because, being a corporation, it could not take a homestead, and because the land was not subject to the grant made for its benefit. A contrary argument would be saying, that while it is true that congress alone possesses the power to dispose of the public lands, yet a private citizen, by his deed, or by his act of estoppel, can

convey full title to a party to lands which are not granted to such party, but which are expressly prohibited from him."

We cannot concur in these views. The decree binds no one but the parties and privies. Neither the government nor any other claimant to this land is concluded by it. Whichever way the decision might be, it would not determine the absolute title to the land. If the plaintiff obtained a decree canceling the defendant's title, it would not establish against the government, or against any one but the defendant and those claiming under it, his right to homestead this land. If the government were a party asserting its rights, then the question might arise whether title as against it can be created by estoppel. There being only private parties to this suit, estoppel has its full sweep as against either, and the contracts they make bind and estop each. Neither can it be said that the contract may be kept in force as a promise to pay money —leaving the question of title open and free for inquiry and cancellation, if found to be in fact worthless—for if the title be once decreed to be null and void, and be canceled, then the promise to pay is without consideration.

One other argument deserves notice, and that is, that this is the homestead of plaintiff and his family, and that as his wife did not sign the contract, it cannot affect the homestead, or estop him or her from asserting to the fullest extent the homestead right. Upon this, counsel say:

"There is another consideration which in our judgment disposes of this question of estoppel, and that is, that Starkweather's wife did not join in the alienation of the homestead by means of the act of estoppel. If the husband cannot by his own deed sell the homestead or incumber it, of course he can perform no action that can estop him and the wife from still claiming the land. All contracts by which the homestead is agreed to be sold or incumbered, unless it is the joint act of the husband and wife, are void. (Art. 15, sec. 9, Const. of Kansas; *Morris v. Ward*, 5 Kas. 239; *Dollman v. Harris*, 5 Kas. 597.)

"The fact that the land was claimed as a government homestead, does not make it any the less a homestead under the state constitution and laws. The legal title to land, or even

the equitable title, is not required in order to constitute a homestead under a state law. A homestead may exist in a leasehold estate. (*Pelan v. DeBevard*, 13 Iowa, 53.)"

To this we reply that, conceding this to be his homestead, the contract is good, whether or not it can be used by the company to enforce a lien upon or to recover the possession of the homestead. The owner of a homestead can surely perfect his title by the purchase of an outstanding title, and his contract to purchase and pay for such outstanding title is good as against him, and he will not be permitted to come into court and repudiate such contract and obtain a decree canceling such title. What rights the company can enforce under such a contract, it is unnecessary to determine. At present it asks nothing, only to be let alone. Perhaps it may never ask more. If so, any inquiry as to its rights is useless. It is evident some interesting questions may arise, as: Whether this be a homestead under our law; whether the company must establish its title, or may rest on the contract; whether this contract to purchase an outstanding title is an incumbrance upon the homestead, and if so, one beyond the power of the husband to contract for; whether the money agreed to be paid for it is to be considered as purchase money so as to render the homestead as to it not exempt; and perhaps others. But these questions may never come before this court for decision, and sufficient unto each case are the questions which are fairly presented by it.

The judgment of the district court will be reversed, and the case remanded with instructions to enter judgment upon the findings in favor of the company, the defendant below.

All the Justices concurring.