BRAMBLE v. KINGSBURY.

39  131
63  300

39  131
69  234

39  131
82  371

39  131
89   23

1. ESTOPPEL IN PAIS:  *What is.*

    Equity does not require one having title to property to seek out a party who is about to purchase it from a supposed owner, and inform him of his title. All that it requires is, that he shall do no act, nor be guilty of any misleading silence, or apparent acquiescence, by which another may be entrapped into a transaction which he would not have entered upon if he had been advised of the objection.

2. SAME:  *Same.*

    If one stands by, silent, when he should assert his claim, and *by that* induces a purchaser to believe that he has none, he will be estopped; but a mere knowledge that one is about to purchase, does not, of itself, impose upon the owner of an equity the duty of seeking him out and advising him against it.

APPEAL from *Miller* Circuit Court in Chancery.

Hon. —— ——, Circuit Judge. .

*John Cook,* for appellant:

1. Defendants having pleaded an estoppel, the burden of proof was upon them to show clearly and satisfactorily what the estoppel was, and the particular acts creating it. *Danley v. Rector, 10 Ark., 227.*

The mere silence of appellant could not create an estoppel, nor did the deed conveying lot ten, with the rights, members, tenements, hereditaments and appurtenances, etc. The rule of caveat emptor would apply unless plaintiff knew defendant was buying with an erroneous opinion as to the location of said lot, etc.

One who holds duly recorded incumbrances is not bound to give notice to a subsequent purchaser without actual notice, etc. (*Mayo et al. v. Cartwright, Admr., 30 Ark., 407.*) The record being constructive notice, no presumption of

acquiescence can arise from the silence of the incumbrancer. Texarkana was laid off into lots, and the plat recorded. It was generally known and talked about, that the building overlapped lot numbered nine.

An estoppel will not be enforced unless established in every particular. (*Carpenter v. Stilwell, 12 Barb., 128.*) The ground of estoppel is fraud, *suggestio falsi* or *suppressio veri;* there must be some turpitude, some inexcusable wrong, that constituted the motive or induced the purchase, to give silence or acquiescence the force of an estoppel *in pais.* Ignorance of the true state of the title, on the part of the vendor, must concur with the *willful* misrepresentation, or concealment, on the part of the person estopped. (*Casey v. Inloes, 1 Gill, 430; Burleson v. Burleson, 28 Tex., 415; Home Ins. Co. v. Holwell, MS. Opn., S. C. Iowa, April, 1881.*

*Williams & Battle,* for appellees:

The right of appellees to that part of lot nine upon which the house stood, was a right *incident* and *appurtenant* to lot ten, under the assignment and deed, without which the house was worthless. This right vested under the conveyance as an incident and easement. *Washburn on Easements, 3d ed., pp. '41–48, 84, 85; Jones v. Jenkins, 11 Am. Law Reg. (N. S.), 24; Havens v. Klein, 15 ib., 483; Ingals v. Plumondon, ib., 220, and note.*

Appellant, by his silence when he should have spoken, is estopped. *Bigelow on Estoppel, 501; Parkhurst v. Van Courtland, 14 John., 15, 43; Jowers v. Phelps, 33 Ark., 465.*

EAKIN, J. Appellant brought ejectment for a small slip of land on the side of a town lot, covered by a building mainly upon an adjoining lot, and occupied by defendant, Kingsbury. Clapp, the owner of the latter lot was admitted to defend, and set up an equitable answer.

The equities of the case result solely from the circum-

stances, and involve the doctrines of part performance and equitable estoppel. The facts essential to make this opinion intelligible are substantially as follows :

Appellant had purchased by title-bond from the St. Louis and Iron Mountain Railroad Company, lot numbered ten, and Crabtree the adjoining lot, numbered nine. Each built upon their respective lots, or intended to do so, but it was afterwards discovered that appellant's storehouse extended over upon lot nine a distance of about seven feet in front and three feet in the rear. This afterwards became well known to both parties, who nevertheless continued to occupy their respective buildings without any litigation. Afterwards they agreed to exchange lots, with some adjustments between them, on account of another lot numbered eight, which lay beyond lot nine, and was owned by them in common. This last lot also passed to appellant. All this was by parol, but each took possession and occupied under the agreement, and in pursuance of it, appellant asserting no claim on account of the encroachment on number nine, which had existed whilst he was, himself, the owner and occupant of number ten.

Afterwards Crabtree sold lot number ten to defendant Clapp, for $1,200. Clapp did not know of the encroachment upon number nine, and the evidence shows, would not have purchased at that price, if he had known he was not getting title to the whole of the storehouse as it stood. Appellant knew of the negotiations for the sale, whilst pending, and, after the sale was agreed upon, transferred his title-bond, and also executed to him a deed of conveyance to lot number ten. This was done to facilitate the transaction with Crabtree, inasmuch as the former exchange had been by parol, and the equitable title from the railroad company had, so far as documentary evidence could show, remained in appellant. Neither the assignment upon the title-bond, nor the conveyance to Clapp, gave any intima-

tion that a portion of the storehouse protruded over number nine. Afterwards appellant brought this suit for the strip of land as aforesaid.

Upon the hearing, the Chancellor decreed the fee simple of all of lot number nine including the strip, to be in appellant, but that, whilst the house stood upon it, he was estopped from disturbing defendant in his possession, and enjoined him accordingly.

From this he appeals.

At the time of the exchange, which was made valid by the possession taken under it, both parties knew of the position of the house, and nothing was said of any obligation on one part to remove it, or of any reserved right on the other to demand its removal, or claim property in it. The house, from its nature, did not admit of a divided enjoyment or separate ownership by any secant line. It is absurd to suppose that any such thing was contemplated, and unnatural that the parties should have been silent on the subject if it had. It would have been a fraud upon Crabtree to have then disturbed the enjoyment of the whole building, and the principle of estoppel in pais applies. It is not really necessary to pursue this inquiry further, for the easement which Crabtree acquired, to have so much of the house rest upon lot number nine, was a valuable appurtenance, which would have passed to his assignee, even with notice, as fully as he was entitled to it himself.

1. ESTOPPEL IN PAIS: What is. If not already estopped, it would, perhaps, not have been required of appellant, upon being informed of the negotiations with Clapp, that he should seek him out and advise him of the encroachment. All that equity requires is, that a person shall do no act, nor be guilty of any misleading reticence, or apparent acquiescence, by which another may be entrapped into a transaction which he would not have entered upon, if he had been advised of the objection. For instance, if one stands by, when he

should assert his claim, and *by that* induces a purchaser to believe he has none, he will be estopped. But a mere knowledge that a third person is about to purchase, does not of itself impose upon the owner of an equity the duty of seeking him out, and advising him against it.

But in this case there was something more. The active agency of the appellant was invoked to perfect the transaction. He assigned the bond, and without any notice of his own claim as to the part of the house, made a conveyance to Clapp of lot number ten, "with all the *rights*, members, tenements, hereditaments, and *appurtenances*, thereunto belonging." The right to have the house rest partly upon lot number nine was essential to its enjoyment. It was, if established, an easement or right, and of that nature which would be covered by the general term "appurtenances." It was necessary in fact to the enjoyment of the property. The appellant knew, or ought to have known, from the circumstances, that the purchaser expected to enjoy the use of the house as it stood, and should, to prevent an estoppel, have given some notice of his claim, either in one of the instruments, or otherwise. The estoppel was two-fold, and the decree equitable.

Affirmed.