WILLIAMS v. FIRST NAT. BANK OF PAULS VALLEY.

No. 642, Ind. T.   Opinion Filed Feb. 18, 1908.

(95 Pac. 457.)

1.     INDIANS—Allotments—Compromise of Contest—Notes—Legality of Contract. A complaint which states that at the time of the execution of the note sued on a contest was pending before the Commission to the Five Civilized Tribes between the payor and payee to determine which one of them had a right to take in allotment a certain tract of land, and that the consideration of said note was the abandoning of said contest by the payee, who was contestant, and permitting one of the payors, who was contestee, to file thereon and take the same as her allotment, which was done, and the same thereby became her separate property, does not state a contract void for illegality, and a demurrer thereto was properly overruled.

2.     SAME—Sufficiency of Consideration. A complaint which states that at the time of the execution of the note sued on a contest was pending before the Commission to the Five Civilized Tribes between the payor and payee to determine which one of them had a right to take in allotment a certain tract of land, and that the consideration of said note was the abandoning of said contest by the payee, who was contestant, and permitting one of the payors, who was contestee, to file thereon and take the same as her allotment, which was done, and the same thereby became her separate property, states the compromise of a disputed claim

sufficient as a consideration to support an express promise to pay and a demurrer thereto upon the ground that it failed to state a sufficient consideration for the note sued on was propei.y over-ruled.

3. **SAME—Legality of Contract—Consideration.** An answer which states that the "sole and only consideration" of the note sued on was the illegal sale of certain lands in the Chickasaw Nation by the payee to one of the payors, and the exhibit filed "as part thereof," and alleged to be a copy of said illegal conveyance, shows that the payee only intended thereby to "bargain, sell, and convey and relinquish all my right, title, or claim which I have in in any way in and to the possession of the lands and improvements situated upon" certain lands (describing them), and to "relinquish" unto said payor and her husband "all right which I have in and to the proceeds due or to become due from the sale of town property, or any interest in said town site located on the above-described premises," fails to state facts sufficient to show an illegal sale of lands or an illegal consideration for said note and a demurrer thereto was properly sustained.

4. **BILLS AND NOTES—Defenses—Failure of Consideration.** A demurrer to an answer which alleges that the "sole and only consideration" of the note sued on was a certain conveyance from the payee to one of the payors of said note, and that the consideration therefor had "totally failed" for the reason that at the time said conveyance was made the payee "did not have the possession, right, or title to the premises in said conveyance described and did not own the improvements situated thereon, and had no interest therein which she could convey" to said payor, was properly sustained, where from a copy of said conveyance "made a part" of said answer and marked "Exhibit A" it appeared that the payee simply relinquished "all my right, title, or claim which I have in any way in and to the possession of the lands and improvements situated upon" certain lands (describing them), and also relinquished to said payor and her husband "all right which I have in and to the proceeds due or to become due from the sale of" other property without covenants of warranty or other covenant.

(Syllabus by the Court.)

*Error from the United States Court for the Southern District of the Indian Territory at Pauls Valley; before Hosea Townsend, Judge.*

Action on promissory note by the First National Bank of Pauls Valley against Jennie Lee Williams and others. Judgment for plaintiff, and defendants bring error. Affirmed.

On June 29, 1904, the First National Bank of Pauls Valley, Ind. T., defendant in error, plaintiff below, filed its complaint in an action at law in the United States Court in the Indian Territory, Southern District, at Pauls Valley, against the plaintiffs in error, defendants below, Jennie Lee Williams, S. L. Williams, and S. T. Williams, to recover on a certain promissory note of $5,000 made and delivered by plaintiffs in error, hereafter called defendants, to Susan E. Mays, on February 4, 1904, payable in 90 days, and by her indorsed to defendant in error, hereafter called plaintiff, for value. After much pleading on January 6, 1905, plaintiff filed its "first amended complaint," to which defendants demurred, and, upon the same being overruled, filed a joint answer, and, upon a demurrer being sustained thereto, filed an "amended answer to first amended complaint." On April 14, 1905, there was by plaintiff filed to this pleading a "demurrer to amended answer to first amended complaint," which was sustained, and, upon defendants electing to stand on their answer, judgment was rendered for plaintiff and against defendants for $5,572, which judgment defendants have brought to this court for review by writ of error.

*George W. Miller, C. L. Herbert,* and *L. C. Dolman,* for plaintiffs in error.

*W. A. Ledbetter, S. T. Bledsoe, J. B. Thompson,* and *Dorset Carter,* for defendant in error.

TURNER, J. (after stating the facts as above). Plaintiff's amended complaint, after formally declaring on the note, says: "Plaintiff further alleges and charges the truth to be that the said note was executed by the said Jennie Lee Williams for the benefit of her separate estate; that at the time of the execution of said note a contest was pending before the Commission to the Five Civilized Tribes, which said body, at the time, under the law, had authority to entertain and hear the same between the said Jennie Lee Williams, one of the makers of said note, and Susan E Mays, the payee therein, to determine which of the

said parties had a right to take in allotment a certain tract of land adjacent to the town of Maysville, Ind. T.; that said note was executed by the said Jennie Lee Williams, S. L. Williams, and S. T. Williams in consideration of the abandoning of said contest by the said Susan E. Mays ,the payee therein; that after said note was executed the said Susan E. Mays did abandon her contest and permitted the said Jennie Lee Williams to take said land in allotment, which she did, and the land thereby became her separate property"; that the said note had been transferred to it by the said Susan E. Mays for a valuable consideration; and that it is now the legal and equitable holder of the same, etc., and pray judgment on the note.

On January 26, 1905, defendants demurred to said complaint, which was overruled by the court and exceptions noted, and the first assignment of error which we shall consider is:

"(1)   The court erred in overruling and denying the general and special demurrers of the defendants to the plaintiff's first amended complaint, for the reason stated in said demurrers; the said amended complaint upon its face having shown that the plaintiff seeks judgment against the defendants upon an illegal and void contract."

The first question, then, is whether the facts set forth in said complaint show that the contract entered into between Susan E. Mays and Jennie Lee Williams was illegal and void.   In other words, had these parties the right to enter into a contract of settlement between themselves of a contest pending before said Commission?   Let us inquire into the nature of such a contest.   The act of Congress approved March 3, 1893, (27 Stat. 645, c. 210, § 16), and March 2, 1895 (28 Stat. 897, c. 188), created what is known as the "Commission to the Five Civilized Tribes." After directing that said Commission compile a roll of the citizens of the various tribes, the act of June 28, 1898 (30 Stat. 497, c. 517), known as the "Curtis Bill," provided:

"Sec. 11.   That when the roll of citizenship of any one of said nations or tribes is fully compiled as provided by law,

\* \* \* the Commission heretofore appointed under acts of Congress, and known as the 'Dawes Commission' shall proceed to allot the exclusive use and occupancy of the surface of all the lands of said nation or tribe susceptible of allotment among the citizens thereof. \* \* \*"

It is further provided under the heading "Allotment of Lands":

"That each member of the Choctaw and Chickasaw tribes \* \* \* shall, where it is possible, have the right to take his allotment on lands, the improvements on which belong to him."

And further:

"That all controversies arising between the members of the said tribes as to their right to have certain lands alloted to them shall be settled by the Commission making the allotments."

Pursuant to power vested in it, said Commission promulgated certain rules of practice and procedure applicable to contests before it, which were approved by the Secretary of the Interior January 27, 1903, entitled "Rules of Practice," wherein it provided:

"Rule 1. Contests may be initiated by or on behalf of an adverse claimant against any party by or for whom a selection of land has been made in the Choctaw, Chickasaw or Cherokee Nations for any sufficient cause affecting the right of possession of the land in controversy, by selecting the same land, and by filing a complaint with the Commission to the Five Civilized Tribes at the land office in the nation in which the land lies."

After providing for service of process on the defendant and getting him into court and providing for a manner of forming an issue between the contesting parties, it is further provided:

"Rule 17. \* \* \* And upon the trial of the contest the Commission will, in all cases when it may be deemed necessary, personally direct the examination of the witness."

Rule 19 provides:

"\* \* \* Upon the day originally set for hearing and upon any day to which the trial may be continued the testimony of all the witnesses present shall be taken and reduced to writing."

Rule 20 provides for reinstatement of dismissal for want of prosecution within 20 days from service of the notice provided in rule 14 upon application of either party.

"Rule 14. Dismissals. Cases will be called for trial on the day and at the hour fixed for hearing, and if the contestant makes no appearance the case will be dismissed for want of prosecution, in which event, written notice of such action, by personal service or registered letter, shall be given by the Commission to the parties at interest, or their attorneys."

Thus it will be seen from the complaint in this case that the contest mentioned therein for and in consideration of the abandonment of which the note was given was, in effect, a suit pending before the Commission to the Five Civilized Tribes which Susan E. Mays had brought against Jennie Lee Williams to determine which of the two had a right to take in allotment a certain tract of land located adjacent to the town of Maysville.

Now the question is whether the abandonment of this contest, or rather the compromise of this suit for the possession of this land thus pending and the contract made pursuant thereto, is illegal and void. In the support of the contention that it is, defendants rely upon the last section of the act cited, *supra*, and upon section 24 of the Supplemental Agreement, which provides that "exclusive jurisdiction is hereby conferred on the Commission to the Five Civilized Tribes to determine, under the direction of the Secretary of the Interior, all matters relating to the allotment of lands," and contend that inasmuch as the former section provides that all such contests shall be settled by the Commission, the word "shall" is mandatory; that the latter section excludes any other tribunal or person from determining any matter relating to an allotment of land; and that the settlement made by which Susan E. Mays "permitted Jennie Lee Williams to take the said land in allotment" was made without consulting the Commission, and was therefore void. In support of this contention it is urged that it has been many times decided that any agreement made by the par-

ties to an allotment contest regarding the disposition of a contest may be ignored by the Commission to the Five Civilized Tribes and several cases alleged to be so decided by the Secretary of the Interior are cited, but which are not before us. Be that as it may, those decisions do not seem to be in point as holding that such a contract is void for illegality; and, as the proposition seems to be unsupported by other authorities cited, we will not enter into an elaborate discussion of the matter, but think it will be sufficient to say that as Susan E. Mays was the contestant in this case she had a perfect right at any time to abandon her contest and permit her adversary to prevail and take the property in controversy for her allotment, which she did, and the dismissal for want of prosecution seems to have been provided for in rule 14, *supra*. It follows that, as the contract under consideration, so far as we are advised, violated no rule of either common or statutory law, and did not contravene any rule of public policy, the same was not illegal and void.

Another rule involved in the discussion of this demurrer in the trial court was whether the complaint stated facts sufficient to show a consideration for the note sued on. The trial court in overruling the demurrer in effect held that it did, and this is alleged as error. The question, then presents itself, is the compromise of a disputed claim sufficient consideration to support an express promise to pay?

In the case of *Buckner v. McIlroy*, 31 Ark. 634, the court said:

"While it is true a right of action does not arise on a mere naked promise, yet, if there be any legal consideration for the promise, the court will not inquire into its adequacy. The law having no means of deciding upon this matter, and it being considered unwise to interfere with the facility of contracting and the free exercise of the judgment and will of the parties by not allowing them to be judges of the benefits to be derived from their bargains, provided there be no incompetency to contract and the agreements violate no rule of law. It is indeed necessary that

the consideration be of some value, but it is sufficient if it be of slight value only; e. g., the compromise or abandonment of a doubtful right is a sufficient consideration for a contract, even when it turns out that the point given up was in truth against the promisee' (1 Chitty on Contracts [11th Ed.] 29). See, also, Parsons on Contracts, 436; Story on Contracts, 431. So an agreement to forbear to institute or prosecute legal or equitable proceedings, or to enforce either a legal or equitable demand, either absolutely or for a time, is sufficient consideration for a promise. Chitty on Contracts, 35.  *  *  *  In general a waiver of any legal or equitable right at the request of another is sufficient consideration for a promise. Parsons on Contracts, 444."

*Burton & Townsend v. Baird & Bright*, 44 Ark. 556, was a suit upon a promissory note, and the defense was no consideration. The evidence tended to prove that the makers of the note had by letter ordered of Baird & Bright, dealers in machinery at Little Rock, one 30-inch Bradford cornmill, with directions to ship same by river to Cates' Landing on the Arkansas river; that the mill was shipped in good order from Little Rock by steamboat consigned to the defendants at Cates' Landing, and was put off at its destination on a sand bar about 40 yards from the main bank of the river, that being the usual place for putting off freight for that landing. Afterwards, by a rise in the river, the mill was washed away and lost. The loss would not have happened if the carrier had deposited the mill on the bank of the river out of the reach of high water, nor if the parts of the mill had been fastened together and the rocks fastened in the frame. Six months after the loss occurred, and when all the facts were known to the defendants and a voluminous corespondence had ensued between the parties as to the liability of the defendants to pay for the mill, they made the note in suit for the payment of the mill. The verdict and judgment were for the plaintiffs both in the justice court, where the cause originated, and in the circuit court, where it was taken on appeal. On appeal the Supreme Court said: "The compromise of a disputed claim is a sufficient

consideration to support an express promise to pay the sum agreed upon, as was determined in *Richardson v. Comstock,* 21 Ark. 69, which was similar in some of its features to the present case"—and affirmed the judgment of the lower court.

In *Mason et al. v. Wilson et al.,* 43 Ark. 172, Mayfield Bros., merchants at Little Rock, had purchased of Mason & Trusdell of St. Louis a lot of butter of the value of $109.52, but had not paid for the same. The order was countermanded after shipment, and before it was delivered Mayfield Bros. failed. The transfer agent at Little Rock, without authority, received the goods, and took it upon himself to transport it from the depot to their place of business. And finding the stores closed he deposited it in a certain warehouse in Little Rock, where it was attached as the property of Mayfield Bros. at the suit of W. T. and R. J. Wilson. The shippers thereupon brought replevin against the constable for the butter and obtained judgment against him, but afterwards made an arrangement with the Wilsons by which the butter was turned over to them with the understanding that they were to account to the shippers for its value, less amount of the claim of the Wilsons against Mayfield Bros. Before the excess in the hands of the Wilsons had been paid over, another creditor of the Mayfields caused a writ of garnishment to be served on them to answer as to what effects of the Mayfields they had in their hands. Judgment was rendered against the garnishees for the surplus. The Wilsons then refused to account to the shippers for this sum, and the shippers sued them before a justice of the peace for the value of the butter and recovered. In the circuit court the plaintiffs claimed judgment for $59.52 according to their agreement of compromise with the defendants. The court decided that the right of stoppage *in transitu* had been lost, and that the butter was the property of Mayfield Bros. when the writ of attachment and garnishment were sued out and served, and gave judgment for the defendants. The Supreme Court, in re-

versing the case, after holding that the butter was the property of Mason & Trusdell, and not the property of Mayfield Bros., at the date of the service of the attachment and garnishment, and that they might have recovered the whole of it or its value, said: "But to avoid litigation they have agreed that the Wilsons might deduct their debt of $50 against the Mayfields out of the proceeds of its sale. And the compromise of a disputed claim is a sufficient consideration to support an express promise, although there may have been no merit or foundation for any such claim," —citing *Richardson v. Comstock*, 21 Ark. 69; *Snow v. Grace*, 29 Ark. 131; *Livingston v. Dugan*, 20 Mo. 102.

*Atchinson, Topeka & Santa Fe Railway Co. v. A. D. Starkweather*, 21 Kan. 322, was a suit to quiet title. It seems that theretofore plaintiff and defendant had a controversy pertaining to their respective rights to the land in controversy before the Commissioner of the General Land Office and the various departments, including the Secretary of the Interior, and that the said controversy was finally decided in favor of the defendant to whom was issued the patent to said land; that at the time plaintiff made the contract hereinafter found to have been made the defendant was then the holder of the legal title to the land in controversy, it being the grantee in the patent of the same; that the defendant advertised the land in controversy for sale, and plaintiff, in order to prevent the land from being sold, and being in want of means to prosecute his case, entered into a written contract with defendant whereby he agreed to purchase the land in controversy; that the plaintiff made the contract with full knowledge of all the proceedings had in the controversy between him and the defendant in the Department of the Interior, and with full knowledge that said land had been awarded to the defendant. The contract recited the sale, the receipt of part of the purchase money, time for subsequent payments, etc., and the agreement on the part of the company to make a deed upon a full compliance with all the con-

ditions of the sale, etc. The contract was signed by both parties. The court said:

"Now, conceding all the plaintiff claims concerning his title and interest in the land, * * * In other words, he had an equitable interest which might be made to ripen into a full equitable title, while the company on the other hand held but the naked legal title. With full knowledge of these respective rights and titles, and of the further fact that in a controversy before the officers primarily authorized to examine and decide upon the conflicting claims of himself and the company to the land they had decided against him and in favor of the company, he makes this contract of purchase. Without the means to carry on further litigation, he contracts to purchase the antagonistic title. He agrees with the owner of that title as to price, pays a portion thereof, and promises to pay the balance, * * * May he now come into a court of equity and obtain a decree canceling and destroying the title which he has thus contracted to purchase? We think not. The contract was valid and binding upon both parties. It was a compromise of contesting claims, the termination of litigation, and the purchase of an outstanding and rival title. It will not do to say that the plaintiff had the better right, that it was the duty of the defendant, having only a naked legal title, and holding the same simply in trust for the owner of the full equitable title, to convey the same to such owner, and that therefore a conveyance or promise to convey was no consideration for a promise on the part of such owner; for the plaintiff was not in fact the owner of the full equitable title, and might never become such, and again and chiefly after a compromise, made with full knowledge and without fraud or deception of a *bona fide* controversy the courts will not inquire which of the two contestants had the better right. It is enough to say that they had a controversy and have settled it, and the fact of the dispute upholds the settlement and its various stipulations. Upon such a settlement the court does not inquire what the facts really are. It accepts the statements which the parties have made as conclusive upon them."

So it seems to be immaterial what the promisor got or did not get on the compromise, or whether the disputed claim was in or out of court The only question is did he get a compromise of a disputed claim? If so, is it sufficient to support a promise to pay?

See, also, *Geo. W. Knotts et al. v. Chas. H. Preble*, 50 Ill. 226, 99 Am. Dec. 514.

In view of the fact that defendants concede "the allegations to establish these facts—there was a contest pending between the parties; that plaintiff's assignor abandoned the same; that she permitted Jennie Lee Williams to take the said land in allotment—now, if it is in the power of a party to a contest to surrender rights. to the other, a consideration undoubtedly passed," we will say that under rule 14, cited, *supra*, when the contestant Susan E. Mays made no appearance, according to her stipulation, and the case was dismissed for want of prosecution, and Jennie Lee Williams prevailed in that case, and was permitted to file on the land in controversy, that thereby there was settled by compromise a question of doubtful rights there pending such as was sufficient to support the promise to pay sued on in this case. It follows that the demurrers to plaintiff's complaint were properly overruled.

On the overruling of their demurrers defendants filed an "amended answer to first amended complaint" wherein they "allege and charge the truth to be that the sole and only consideration of said note as aforesaid was the pretended and illegal sale of certain lands situated near Maysville in the Chickasaw Nation, Ind. T., by said Susan E. Mays to said Jennie Lee Williams; that said pretended sale was illegal, fraudulent, and void, * . * * " and as evidence therof filed a copy of said alleged pretended and illegal conveyance as part of their answer and marked it "Exhibit A." Still further answering, in the third paragraph "defendants say that the plaintiff ought not to further prosecute and maintain this action against them, because they allege and charge that at the date of the execution of said conveyance from Mrs. Susan E. Mays to Jennie Lee Williams as aforesaid said Susan E. Mays did not have the possession, right, or title to the premises in said conveyance described, and did not own the improvements situated thereon, and had no interest therein which she could convey to the defendant, Jennie Lee Williams, and that the consider-

ation of the note herein sued on for that reason has totally failed," and ask to be discharged with their costs. To this pleading plaintiffs filed general and special demurrers, which were sustained.

And the next assignment of error which we shall consider is:

"(2) The court erred in sustaining the general and special demurrers of the plaintiff to the amended answer of the defendants to the first amended complaint, and in dismissing this cause from the docket of the court, in that the said amended answer contains statements constituting a good and valid defense to plaintiff's alleged cause of action as shown by its first amended complaint."

We will consider this together with the next assignment of error, which is:

"(3) The court erred in sustaining the plaintiff's general and special demurrers to paragraph 3 of defendants' amended answer to the first amended complaint, in that in said paragraph the defendant states that at the execution of the conveyance from Mrs. Susna E. Mays to Jennie Lee Williams the said Susan E. Mays did not have the possession, right, or title to the premises described in said conveyance, and did not own the improvements situated thereon, and had no interest therein which she could convey to the defendant, Jennie Lee Williams, and that the consideration of the note sued on for that reason totally failed."

The exhibit attached to the pleading reads as follows:

"That I, Susan E. Mays, of Maysville, Ind. T., for and in consideration of the sum of one dollar ($1.00) cash in hand to me this day paid by Samuel L. Williams and Jennie Lee Williams, the receipt of which money is hereby acknowledged, and the further consideration of the sum of five thousand dollars ($5,000) to be paid by Samuel L. Williams and Jennie Lee Williams on the 4th day of May, 1904, which indebtedness is evidenced by a promissory note of even date herewith, due on the 4th day of May, 1904, bearing interest at the rate of 8 per cent. per annum from date, signed by S. L. Williams, Jennie Lee Williams, and S. T. Williams, I hereby bargain, sell, and convey and relinquish all my right, title, or claim which I have in any way in and to the possession of the lands and improvements situated upon [describ-

ing the lands] Chickasaw Nation, Ind. T.; relinquishing unto the said Samuel L. Williams and Jennie Lee Williams all rights which I have in and to the proceeds due or to become due, or from the sales of town property or my interest in the said town site located on the above-described premises; hereby relinquishing to them any claim that I have by any former agreement pertaining to any town site on said lands above described. Witness my hand this, the 4th day of February, 1904. [Signed] SUSAN E. MAYS."

Without passing upon the question as to whether or not the facts set forth in this exhibit can be properly considered by us in reviewing the action of the lower court, or whether they could have been properly considered by the lower court in passing upon this demurrer, we will say that it clearly appears from the statements therof that they do not bear out the statements made in the complaint. Instead of the "sole and only consideration of said note" being "the pretended and illegal sale of certain lands," the exhibit shows that it was only intended by Susan E. Mays to "bargain, sell, and convey and relinquish all my right, title, or claim which I have in any way in and to the possession of the lands and improvements situated upon" certain lands, and that she was simply, in addition thereto, "relinquishing unto Samuel L. Williams and Jennie Lee Williams any right which I have in and to the proceeds due or to become due from the sales of town property, or any interest in the said town site located on the above-desribed premises." Thus it would appear from the complaint, if said exhibit is to be considered a part thereof, that the "sole and only consideration of said note" was not "the pretended and illegal sale of certain lands situated near Maysville in the Chickasaw Nation, Ind. T.," and that the court committed no error in sustaining a demurrer to that plea.

The third paragraph of the answer reads as follows: "(3) And still further answering herin the defendants say that the plaintiff ought not to further prosecute and maintain this action against them, because they allege and charge that at the date of execution of said conveyance from Susan E. Mays to Jennie Lee

Williams as aforesaid said Susan E. Mays did not have the possession, right, or title to the premises in said conveyance described, and did not own the improvements situated theron, and had no interest therein which she could convey to the defendant, Jennie Lee Williams, and that the consideration of the note herein sued on for the reason has totally failed"—and ask to be discharged with their costs. To this paragraph of the answer plaintiff demurs " * * * because the matters therein set forth are wholly irrelevant, and immaterial to the issues, and constitute no defense to plaintiff's cause of action, or any part thereof." The court sustained this demurrer, and the question now is whether this paragraph states facts sufficient to constitute a plea of total failure of consideration.

Mansfield's Digest, § 5033 (Ind. T. Ann. St. 1899, § 3238), provides:

" * * * The defendant may set forth in his answer as many grounds of defense, * * * as he shall have. Each shall be distinctly state in a separate paragraph, and numbered."

Bliss, Code Pleadings, § 346, says:

"This requirement to state each defense separately is substantial as well as formal, and involves the obligation to embody in each statement every fact which is necessary to constitute the defense."

See, also, *Cairo & Fulton R. R. Co. v. Parks,* 32 Ark. 131; *Taylor v. Purcell,* 60 Ark. 611, 31 S. W. 567.

In speaking of pleas of failure of consideration, 8 Cyc. 161, says:

"These pleas when permissible should be framed on the theory that originally there was a consideration which wholly or partially fails because of something occurring subsequently, and must state facts sufficient to defeat or diminish a recovery."

14 Enc. Pl. & Pr. p. 635, says:

"Where the alleged failure consists in the nonperformance of of plaintiff's reciprocal promise or duty, the allegation and breach thereof must be distinctly alleged, showing with certainty that de-

fendant has suffered damage directly resulting from the alleged breach."

Now, giving this plea every intendment gathered from the entire answer, which we are not compelled to do, where is alleged the nonperformance of plaintiff's reciprocal promise and the breach thereof? In other words, where in this plea is alleged a duty and a breach thereof on the part of plaintiff which he has not performed resulting in damage to this defendant? It is simply alleged that "said Susan E. Mays did not have the possession, right, or title to the premises in said conveyance described, and did not own the improvements situated thereon, and had no interest therein which she could convey to the defendant, Jennie Lee Williams." Does the plea show that Susan E. Mays so represented? Did she purport to convey the title to this property to Jennie Lee Williams? It does not so appear from the face of the plea. To aid it, if possible, let us turn to the exhibit. That only purports to "bargain, sell, and convey and relinquish all my right, title, or claim which I have in any way in and to the possession of the lands and improvements situated upon (describing the land), and relinquishing to the makers of this note all rights which I have in and to the proceeds due or to become due" of other property. There was no warranty of title here.

*Ray et al. v. Woolfolk, Use, etc.*, 1 Smedes and M. (Miss.) 523, was an action in assumpsit on a promissory note executed by plaintiffs in error, the defendants below. Besides the general issue they filed a special plea to the effect following: "That the note sued on was executed for and in consideration of a certain town lot in Brandon, sold by Charles S. Woolfolk, as executor of William R. Woolfolk, deceased, to the defendants, and for no other consideration; and they aver that the whole consideration has failed, because neither the said decedent nor his said executor ever had any title to said lot which they could communicate to the defendants." To this plea there was a demurrer. Passing on it the court said:

"It does not disclose enough to enable the court to determine whether the consideration has failed or not. It states no warranty of title and for aught that appears the purchaser might have agreed to run the risk of the title. It is therefore defective."

So we say in this case this plea states no warranty, but from the exhibit it does affirmatively appear that the purchaser, the defendant in this case, did agree to run the risk of the title to the property therein set forth, and cannot now be heard to say that the consideration of the note given in purchase of that property failed by reason of plaintiff's failure of title therein. Nowhere is it alleged that she did not derive the benefit of that compromise, or is not in full and undisputed possession of everything involved in that controversy. Nowhere is it alleged that she has in any way been disturbed in her possession in anything thereby acquired, or has suffered any damage by reason of the alleged failure of title; but it is conceded on both sides that she took the property in controversy in allotment.

In support of the doctrine that a breach of the reciprocal promise must be distinctly alleged showing with certainty that the defendant has suffered damage, we call attention to *Taylor v. Purcell*, 60 Ark. 612, 31 S. W. 568, where the court said: "In the first paragraph of the supplemental answer he alleges in substance that the plaintiff, to induce him to execute the note sued on, agreed to release all claims under a certain deed of trust upon defendant's property, and that they had failed to comply with such agreement, and that the trust deed was still unsatisfied, etc. But he does not state * * * that he was damaged in any way by the failure to satisfy said deed. He does not allege that plaintiff afterwards made any claim to the property described in the deed, or disturbed his possession or right thereto to any extent, * * * "—and held that this paragraph constituted no plea of failure of consideration for the note sued on.

It follows that the court did not err in sustaining the demurrers to the defendants' amended answer to the first amended com-

plaint, and, as the facts set forth in plaintiff's first amended complaint were sufficient to state a cause of action, that the judgment of the lower court must be affirmed.

All the Justices concur.