## PIEKENBROCK v. SMITH *et al.*

No. 3684.    Opinion Filed October 13, 1914.

(143 Pac. 675.)

1.    **MORTGAGES—Validity—Duress—Sufficiency of Evidence.** Evidence examined, and held to reasonably tend to prove that the note sued on, together with the mortgage sought to be foreclosed, were executed as a result of menace and threat of unlawful imprisonment, and that the court was right in sending the question of duress to the jury.

2.    **CONTRACTS—Execution—"Duress."** The question in each such case is: Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of that quality of mind essential to the making of a contract, and was the contract thereby obtained.

3.    **MORTGAGES—Validity—Duress—Ratification.** Where the note and mortgage sought to be foreclosed were obtained by duress, and where about six months thereafter one of the defendants, in reply to a letter from plaintiff offering to take the principal only of the alleged debt sought thereby to be secured, replied that as tight as money was all over the country the offer was

no inducement, but that if plaintiff had a proposition worth while to let him submit it, held, that such did not constitute a ratification of the alleged contract sought to be enforced.

(Syllabus by the Court.)

*Error from Superior Court, Grady County;*
*Will Linn, Judge.*

Action by C. W. Piekenbrock against Hila W. Smith and another. Judgment for defendants, and plaintiff brings error. Affirmed.

*W. E. Richardson* and *J. G. Myerly,* for plaintiff in error.

*F. E. Riddle* and *J. T. Dickerson,* for defendants in error.

TURNER, J. On July 16, 1910, C. W. Piekenbrock, plaintiff in error, as payee, sued Hila W. Smith and Florence Smith, in the district court of Grady county, on their promissory note, dated December 21, 1909, for $1,500, payable six months after date, with interest, and to foreclose a real estate mortgage, executed by Hila W. Smith on certain real estate located in that county, to secure the payment thereof. In their second amended answer defendants admitted the execution of the note and mortgage and pleaded want of consideration and duress. They also set forth a counterclaim for $500, for which they prayed judgment, and that the note and mortgage be canceled. Thereafter the cause was transferred to the superior court of Grady county and issue joined by reply. After demurrer to said answer was filed and overruled, there was trial to a jury, and judgment for defendants, and plaintiff brings the case here.

It is assigned that the court erred in overruling plaintiff's demurrer to the answer, and also to the evidence on the plea of duress and want of consideration. The evidence discloses that, prior to the execution of the instruments sued on, W. D. Lane appeared in Des Moines, Iowa, for the purpose of establishing a perpetual care cemetery, and to that end opened negotiations with S. P. Frick, who thereafter was made president of the "Elmdale Park Cemetery Association"; that defendants, maiden ladies somewhat advanced in years, were living in Chickasha; that on

request of Lane they went to Des Moines and were introduced to Frick by Lane, and by them were made acquainted with the project. Later, pursuant to an understanding between them, a tract of land belonging to plaintiff, upon which Lane and Frick had obtained an option, was purchased and the title conveyed to defendant Florence Smith, as trustee of the corporation thereafter organized. When organized, Frick was elected president, Hila W. Smith, secretary, and J. G. Myerly, counsel and one of the directors. The preliminary payment of $3,000 was made by defendants. After the organization stock was sold, under and by direction of the board of directors, through Lane as agent for the corporation. The land so purchased from plaintiff was divided into 8,200 shares, which were sold at a certain specified amount. Of this amount of shares, plaintiff purchased from the corporation $10,000 worth, and gave in payment therefor a receipt for that amount, to be applied on the price of the land. Pursuant, also, to prior agreement these shares were made out in the name of Florence Smith, as trustee for the corporation. When they were sold, the corporation would issue the stock, signed by the president and secretary and under its seal. President Frick was issued a block of this stock in payment for his services, and so was the attorney, Myerly. The plaintiff, Piekenbrock, got 50 shares for $1,250, which he went to the office of the company and bought. In addition to those shares, Lane hypothecated a number of shares, theretofore issued to him, to plaintiff, in consideration of a loan of $750. At that time Lane being indebted to defendant Hila W. Smith, he paid her $500 of said amount; but defendants had nothing to do with the hypothecation or the loan. Lane shortly thereafter left for parts unknown. Plaintiff was not out his land, but so far as the record discloses defendants have lost their $3,000.

After the project failed, and defendants were preparing to leave Des Moines for Chickasha, notice was served on them by the sheriff, signed by J. G. Myerly, who theretofore had counseled defendants in all things as their attorney. The notice was in effect a summons. It was designated "Original Notice." It was directed to defendants, and notified them, in effect, that on De-

cember 23, 1909, the petition of plaintiff, C. W. Piekenbrock, would be filed in the office of the clerk of the district court, Polk county, Iowa, claiming that by false statements and representations made by defendants' agents he was induced to purchase of defendants certain worthless shares of the Elmdale Park Cemetery Association, to the number of 450, and pay therefor the sum of $1,250 and deliver a receipt for $10,000 as part payment on purchase price of certain lands sold defendants, and also to loan defendants $750 on the security of 200 of such shares, and asking that the sale of said shares be rescinded and set aside, and the receipt for $10,000 be canceled and returned to plaintiff, and for judgment against defendants for $2,000 and that said sales and loan be rescinded. Upon its receipt they immediately went to Myerly's office. Arriving there, he, in a "vindictive" way, in answer to their inquiry as to what it meant, told them that they were not familiar with the laws of Iowa, that they had laid themselves liable to prosecution, and would not be permitted to leave the city until they had settled with plaintiff. He also told them that he would have plaintiff come to the office the next day, to which place they agreed to return and meet him. On their arrival the next day Myerly, in the presence of plaintiff, informed them that they could not leave town until plaintiff was settled with, all of which they said they believed, and that if they undertook to leave town they would be arrested. He further told them that they had obtained his money under false pretenses and were liable to imprisonment, which they also believed. At that time the defendant Florence Smith had just gotten up from a spell of sickness and was weak in body and mind. Under these circumstances the $10,000 receipt was returned, a check for $500, afterwards collected by plaintiff, was made payable and delivered to him, and the note and mortgage then and there executed. The testimony shows that they owed Piekenbrock nothing.

Assuming the defendants' demand for $2,000 arose at that time to the dignity of a disputed claim, and was sufficient to support the express promise to pay (*Williams v. First National Bank,* 20 Okla. 274, 95 Pac. 457), upon which recovery is sought, as the evidence reasonably tends to prove that they were executed

as a result of menace or threats of unlawful imprisonment, the court did right in sending the question of duress to the jury.

Defendant Hila W. Smith testified:

"Q. Did you actually believe you could not leave the city of Des Moines, at the time you made the note and mortgage, until this was done? A. I did. Q. Tell the court and jury if that was the sole reason for you executing the note and mortgage. A. It was the sole reason. Q. Now, when was this check given Mr. Myerly, or the plaintiff, in reference to the time the note and mortgage was executed? A. It was given to them at the same time. Q. Under the same conditions? A. Yes, sir."

The other defendant testified substantially to the same thing.

Duress sufficient to avoid a contract is said to exist when consent thereto is obtained by (Rev. Laws 1910, sec. 900) unlawful confinement of the person of the party, or (section 901) a threat of such unlawful confinement. This is in keeping with Bouvier, who defines duress to be "personal restraint or fear of personal injury or imprisonment."

While plaintiff concedes that the modern doctrine repudiates the theory that the duress must be such as to overcome the will of a person of ordinary firmness, and tempers the conditions to the subject acted upon, he insists that the courts are in accord that, in order to constitute duress by threat of imprisonment, the danger must be imminent, and it must appear that a warrant at least has issued or the charges actually filed. Not so. 9 Cyc. 450, of the modern doctrine, says:

"The question in each case is: Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of the quality of mind essential to the making of a contract, and was the contract thereby obtained? Duress, then, according to this class of cases, includes that condition of mind produced by the wrongful conduct of another, rendering a person incompetent to contract with the exercise of his free will power. *  *  *"

Such is the view of this court. *Enid Electric & Gas Co. v. Decker*, 36 Okla. 367, 128 Pac. 708, was a suit in damages for personal injuries produced by the explosion of a gas tank which plaintiff was opening in close proximity to a lighted lantern. The defendant produced a release, and plaintiff pleaded duress

in its procurement. The question was whether there was suffi-
cient evidence to send the case to the jury on that issue. Plain-
tiff testified that he did not understand the nature and the pur-
port of the release agreement; that he was just recovering from
the injuries he had received when he signed it, and was weak
and sore; that he had eaten nothing that day; that he signed it
because he was weak and hungry, and was scared because of what
Zeck had said; that he told him they had given Pearl something
to eat off of, and if he would sign the release they would give
him something to eat off of; that he was afraid of what Zeck
had said, and did not know but that they would fine him $3,000;
that Zeck said he was liable for a fine for wasting the oil and
tearing up the machinery around there. In that case, although the
evidence failed to disclose that the threatened danger of imprison-
ment was imminent, or that a warrant had been issued, or that
charges had actually been filed, this court held that the trial court
was right in sending the question of duress to the jury.

In *Hogan et al. v. Leeper,* 37 Okla. 655, 133 Pac. 190, 47 L.
R. A. (N. S.) 475, an old man sought to set aside his deed of
trust. As stated by the court the facts were:

"The plaintiff testified that the lawyer and his son threat-
ened to have him and the Scantlin woman arrested unless he
signed the deed of trust. The testimony of his son and the
lawyer, however, is that they told him, if he did not sign the
deed of trust, they would have a guardian appointed for him,
and their statement is accepted as correct. After some discus-
sion, at the request of the plaintiff, the lawyer withdrew from
the room, and the plaintiff talked the matter over with his son.
The lawyer returned to the room, and told his son to make him
sign the deed of trust just as it was. After further conversa-
tion he signed the deed of trust. When he did so, according
to his and his son's statement, he began crying, and stated that
he had signed his life away."

In the opinion the court said:

"The burden is always on the party alleging one or all of
these grounds of cancellation to prove them, or some of them,
and some of the language of the court was not an accurate state-
ment of the law; but a fair interpretation of his decision is that,
when it was shown that Bailey was called to the office of a
stranger to him, suddenly presented with a deed of trust, and

by his son and his son's lawyer given the alternative of signing the instrument or having guardianship proceedings begun, and that he signed it with the statement, with tears in his eyes, that he was signing his life away, the plaintiff had made a *prima facie* case that must be met by proof on the part of the defendant. That this was the correct view is supported by natural reason as well as by several authorities cited above."

In other words, the general rule is laid down in *Radich v. Hutchins et al.,* 95 U. S. 212, 24 L. Ed. 409:

"To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * * * there must be some actual or threatened exercise of power possessed * * * by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment. As stated by the Court of Appeals of Maryland, the doctrine established by the authorities is that 'a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid.' *Baltimore v. Lefferman,* 4 Gill [Md.] 425 [45 Am. Dec. 145]; *Brumagin v. Tillinghast,* 18 Cal. 265 [79 Am. Dec. 176]; *Mays v. Cincinnati,* 1 Ohio St. 268."

See, also, *Cribb v. Sowle,* 87 Mich. 340, 49 N. W. 587, 24 Am. St. Rep. 166; *Briggs v. Withey et al.,* 24 Mich. 136.

What is there said as to compulsory payments is, of course, applicable here as to a compulsory promise to pay.

The evidence further discloses that on defendants' return to Chickasha they consulted a lawyer, and stated to him the circumstances under which the note and mortgage were executed; that, the note being negotiable, he advised them, in effect, not to do anything that would cause the same to be negotiated.; that, acting upon his advice, they did nothing to repudiate the transaction for more than six months; that after February 1, 1910, in reply to a proposition that, if they would pay the principal, the accrued interest would be discharged, Hila W. Smith replied that such was no inducement. By plaintiff's sixth request the court is asked to charge, as a matter of law, that if defendants, after the execution of the instruments sued on, gave no notice of an intent to repudiate the transaction for more than six months,

and, in reply to a proposition of settlement addressed by plaintiff to defendant Hila W. Smith, she replied that as tight as money was all over the country such was no inducement, but that if plaintiff had a proposition worth while to let him submit it, and that if this reply was made with the consent of defendant Florence Smith, such facts evidenced a ratification and worked an estoppel to deny the validity of the note and mortgage. Not so, for the reason that same was not such recognition of the validity of those instruments as would constitute a ratification and estop the makers to deny their validity. While a contract obtained by duress is not ordinarily void, but merely voidable, and may be subsequently ratified, so as to work an estoppel by the constrained party voluntarily acting thereupon, this case does not fall within that class. This for the reason that merely seeking to temper the severity of the duress by attempting a compromise in whole or in part has never been held to be such action upon the duressed contract as will work a ratification, where, as here, the result was not such as to induce the payee to change his position to his injury. Such action contemplates something in the nature of a part performance.

*Lyon v. Waldo et al.,* 36 Mich. 345, was a suit in chancery for the foreclosure of a bond and mortgage. A plea of duress was interposed. The facts were they were obtained by means of a prosecution for adultery. Thereafter the wife sued and obtained a divorce, but, relying upon the agreement made by her husband, she asked for and obtained no alimony. For two years the husband recognized the two securities as valid and made two annual payments upon them. In the syllabus it is said:

"Duress is a good defense, if it is made in good faith and seasonably; but the misuse of legal process to obtain securities is to be regarded as a species of fraud, and where a party relies upon it in equity, as a ground for avoiding his security, he is bound as in other cases * * * to move promptly, and must not sleep on his rights, and if he goes on, and by his conduct assumes the contract to be in force until the position of the other party to it has changed, he ought to be held to have affirmed it."

*Le Flore County v. Allen et al.,* 80 Miss. 298, 31 South. 815, was a suit by the wife of a defaulting county treasurer to set aside

a deed made to secure the amount of her husband's defalcation, made under duress by the district attorney. In the syllabus, on the subject of ratification, it is said:

"The fact that a wife lived two years after making a deed, void because made under threats of the prosecution of her husband, and expressed satisfaction at the acceptance of the deed and the prevention of disgrace, is not a sufficient ratification to validate the deed, the husband being still alive and subject to prosecution."

See, also, *Oregon, etc., R. Co. v. Forrest et al.,* 128 N. Y. 83, 28 N. E. 137; *Foerster v. Squier* (N. Y. City Ct.) 19 N. Y. Supp. 367; *Hensinger et al. v. Dyer et al.,* 147 Mo. 219, 48 S. W. 912; *Bogue et al. v. Franks,* 199 Ill. 411, 65 N. E. 346.

As no useful purpose can be subserved in a review of the charge of the court, the verdict being so manifestly in keeping with substantial justice, the judgment is affirmed.

All the Justices concur, except RIDDLE, J., of counsel and disqualified.