## James H. Wheeler v. Augustus Pettyjohn.

### (Filed March 4, 1904.)

1.  COMPOSITION—Underhand Agreements—Public Policy.  Where in the case of a failing debtor, a general composition is had with creditors, by the terms whereof the debtor's liabilities are to be settled for less than the face value of his obligations, and one creditor who goes into a contract of general composition common to the others, at the same time has an underhand agreement with the debtor to receive a larger per cent, such agreement is fraudulent and void, because subversive of sound morals and public policy.

2.  PROMISSORY NOTE—Consideration—Duress.  Where in an attempt at composition among creditors, one creditor demands and accepts a note and mortgage to secure the amount coming to him, over and above the amount agreed upon as the basis of composition, without other or further consideration than that the same shall represent an amount due such creditor after a composition has been effected, such note and mortgage is void for want of consideration.  And where, when a composition has been effected, a demand is made upon the debtor for a re-execution of the note and mortgage, and the debtor receives into his hands such note and mortgage, and destroys the same, refusing to re-execute it, and is arrested charged with the larceny of the same, and to secure a release from such arrest and prosecution, re-executes such note and mortgage, such transaction gives to the instrument no new life.  It was void for want of consideration when executed. and equally void when re-executed, and in addition was void for duress in securing its re-execution.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*J. H. Everest,* for plaintiff in error.

*C. Porter Johnson* and *W. C. Reeves,* for defendant in error.

Opinion of the court by

GILLETTE, J.: A voluminous record is presented to the court for consideration in this case. Only such questions as are presented by the plaintiff in error will be considered. The facts sufficiently appear in the opinion.

The defendant, Augustus Pettyjohn, being in failing circumstances in the month of February, 1898, made an assignment of all his property for the benefit of his creditors to one N. P. Gates, and having subsequently effected a composition with all his creditors, by the terms whereof his commercial creditors were to receive in full satisfaction of their demands fifty cents on the dollar, and the Bank of Commerce of Oklahoma City sixty cents on the dollar of its demand against him, he negotiated a loan with one James L. Wilkin for funds with which to discharge his obligations according to the terms of such composition, which loan was evidenced by his note in the sum- of $4,395.30. His creditors having been satisfied in full for a less sum than that named in said note and mortgage, he demanded of Mr. Wilkin a cancellation of said note and mortgage and a return to his possession of all the property covered thereby, which demand being refused, he brought this action to recover the same; whereupon this plaintiff, James H. Wheeler, filed in said action his petition of intervention, praying judgment against the defendant in the sum of $454.80 upon a certain promissory note dated March 3, 1898, and for the foreclosure of a mortgage given to secure the same.

The defendant Pettyjohn answered this petition of intervention, denying any consideration for the note and mortgage sued on, and alleging that it was obtained by duress.

The case proceeded to trial before the court and a jury, upon the issues framed by this petition of intervention and the answer thereto.

From the evidence taken upon the trial it appears that the defendant Pettyjohn, having negotiated for this composition among his creditors, applied to the plaintiff as president of the Bank of Commerce for a loan of funds sufficient to carry it out. This the plaintiff refused to consider, and referred the defendant to Mr. Everest, who was attorney for the bank. He thereupon called upon Mr. Everest at his office, Mr. Wheeler at the time being present, when it was agreed, according to the testimony of Pettyjohn, that the plaintiff should furnish him the money to effect the settlement with his creditors, including sixty per cent of the bank's claim, in consideration of which defendant Pettyjohn executed to Richard Avey his note and mortgage for $454.80, being the forty per cent balance of the bank's demand.

This fact is established, not only by the testimony of Mr. Pettyjohn, but was found by the jury in answer to special interrogatory No. 5, which reads as follows:

"Int. 5. Did J. H. Everest, as attorney for the Bank of Commerce, or intervenor herein, as president of said bank or both of them, represent to plaintiff at and prior to the time he executed the note and mortgage, dated March 3, 1893, that said bank would furnish the plaintiff a sufficient sum of money to make the proposed settlement with his creditors?

"Answer to Int. 5. Yes."

There is one other fact established by the proof and found to exist by the jury, that must be noticed in the

determination of this case. The commercial creditors of Mr. Pettyjohn agreed to the proposed settlement upon condition that the bank should settle its demands upon the payment of sixty per cent thereof. This was known and understood by the bank officials, including Mr. Wheeler, the plaintiff, and Mr. Everest, its attorney, at the time of the negotiation between them and Pettyjohn for the execution of this forty per cent note of March 3, 1898.

The negotiations for this note, which was intended to make full payment of the bank's demands, were secretly entered into, and after its execution it was left in Mr. Everest's office. The account of Mr. Pettyjohn at the bank was not credited with it in any way. The note was executed to Mr. Avey and by him assigned to Mr. Wheeler. Mr. Pettyjohn received no consideration for this note and mortgage, and none was intended other than a settlement of Pettyjohn's indebtedness to the bank.

It was the manifest purpose of the plaintiff Wheeler in this transaction to secure the bank the payment of one hundred cents on the dollar of its demands against Pettyjohn, while at the same time his (Pettyjohn's) commercial creditors should receive but fifty per cent of their demands, and receive the same upon the belief and understanding that the bank was receiving but sixty per cent. The plaintiff and the bank afterwards failing and refusing to supply Pettyjohn with funds necessary to liquidate his indebtedness according to the terms of the agreement of composition agreed upon, Mr. H. H. Howard, attorney for Mr. Pettyjohn, negotiated with Mr. J. S. Wilkin for the necessary funds, and Mr. Wilkin was secured therefor by a mortgage upon defendant Pettyjohn's property.

The forty per cent note and mortgage in Everest's hands had not at the time been recorded; indeed, it was agreed at the time of its execution that it should not be, and no publication thereof made which would deter the other creditors of Pettyjohn from finally consummating the composition. The consummation of the Wilkin loan and the recording of the mortgage given to secure the same, took from under this forty per cent deal, its security. Out of the funds supplied by Mr. Wilkin the creditors of Pettyjohn were all paid according to the terms of the composition, the bank receiving its sixty per cent, upon the receipt of which the bank assigned to Mr. Howard its original evidences of debt against Pettyjohn.

After the execution of the Wilkin security, which left the forty per cent deal of the bank substantially without security, Mr. Everest, in behalf of the bank, sought to renew with Pettyjohn the security for the forty per cent claim, evidenced by the $454.80 note of March 3, 1898, and presented the same to Pettyjohn with a request that a new mortgage be executed. Mr. Pettyjohn took the papers from Mr. Everest, and after examining the same destroyed them, denying their validity, and refusing to execute others in their stead. Mr. Everest thereupon caused the arrest of Mr. Pettyjohn, charged with the larceny of those papers, to avoid which arrest and humiliation Pettyjohn finally consented to a re-execution of the papers, and the criminal prosecution against him was thereupon dismissed.

The jury upon the trial of the case found for the defendant Pettyjohn upon all the issues submitted, and the court entered judgment thereon, to reverse which this proceeding in error is now pending.

Upon the trial of the case numerous objections to the introduction of evidence were made and rulings had thereon, and exceptions taken upon both sides, but none of these are now relied upon in this court. Numerous changes and amendments in the pleadings were also permitted and made upon both sides during the progress of the trial, but of these also no complaint is now made.

It is contended on behalf of the plaintiff in error that there was no composition between Pettyjohn and his creditors which included the Bank of Commerce; that the Bank of Commerce acted for itself in settling its claim with Pettyjohn at sixty per cent on the dollar cash, and forty per cent in the note in question. The very statement of this proposition carries with it an argument against it, under the facts above stated. The division of the debt into payments of sixty per cent cash and forty per cent note and mortgage, shows a settlement upon the lines of the proposed composition, and while it may be conceded that the Bank of Commerce or the plaintiff Wheeler acting in his own name for the bank, might lawfully make such arrangement for the settlement of its debts as it saw fit, and the agreement would be binding, yet to be binding it must be an independent transaction, and this we understand to be the rule laid down in *Clark v. White*, 12 Pet. 178, to which we are referred. There the court states the following:

"The rule cutting off underhand agreements in cases of joint and general composition, as a fraud upon the other compounding creditors, and because such agreements are subversive of sound morals and public policy, has no application to a case like the present, where each creditor acts not only for himself, but in opposition to every other cred-

itor, all equally relying upon their vigilance to gain a priority; which, if obtained, each being entitled to have satsifaction, the payment cannot be questioned."

The converse of this proposition must be held to be equally true, to wit: That an underhand agreement in case of joint and general composition is a fraud upon the other compounding creditors, and this we understand to be the import of the decision in *Clark v. White, supra,* for there the court quotes approvingly First Story, 371, as follows:

"If, upon failure of insolvency, one creditor goes into a contract of general composition common to the others, at the same time having an underhand agreement with the debtor to have a larger per cent, such agreement is fraudulent and void, and cannot be enforced against the debtor or any surety to it."

Was the plaintiff Wheeler acting independent of the other creditors and composition by them tendered?

He had before him the proposed composition. To reject it or demand full satisfaction either in cash or upon time payment, was his privilege, and any agreement had in that manner would be a binding agreement. But to pretend to accept it so as to induce the other creditors to go ahead, and he thereby receive the bank's sixty per cent, and at the same time secretly demand and receive the obligation here sought to be enforced, is not acting independently of such other creditors, but on the contrary is a pretense of acting with them, receiving the cash benefit of the composition, while secretly demanding and receiving security for the payment of the balance of their claim in full. This is the fraud the law abhors, and will not permit an enforcement of. This exact question and proposition was presented in the

evidence and passed upon by the jury on the 4th, 7th, 8th, and 9th special questions presented to them, which are as follows:

"Int. 4. Was the note and mortgage executed by plaintiff, Pettyjohn, to Richard Avey at the request of intervenor as president of the Bank of Commerce and J. H. Everest, its attorney, by an agreement entered into between said plaintiff, said Everest and said intervenor, taken by intervenor and Everest and retained for the purpose and with the intent of concealing same from the other creditors of said plaintiff, so that the settlement of the original indebtedness of said plaintiff to the Bank of Commerce would appear on the face of it to be settled in full for 60 per cent of its face value?

"Ans. Yes."

"Int. 7. Did the creditors of Pettyjohn, other than the bank agree to take fifty cents on the dollar, and demand as a condition of that agreement, that the bank should agree to take sixty cents on the dollar of its indebtedness?

"Ans. Yes."

"Int. 8. Do you find that intervenor took said first note with the fraudulent intent to deceive the other creditors of Pettyjohn into compromising their debts at fifty cents on the dollar, on the belief that the Bank of Commerce was getting only sixty per cent on its claim?

"Ans. Yes."

"Int. 9. Do you find that intervenor accepted the first note made in the name of Avey as a part of a plan and with the design to conceal from the other creditors the fact that the bank was to get its claim in full?"

"Ans. Yes."

These findings of fact were founded upon sufficient evidence offered on the trial of the cause, and such fact being

established, in the judgment of this court, finally disposes of the intervenor's right of recovery.

There are other propositions connected with the case that we will notice, because the same are presented by the pleadings and the argument of counsel.

The answer of defendant in error challenges the consideration for which the intervenor's note and mortgage were given. The defendant Pettyjohn became insolvent, and his property passed into the hands of an assignee in February, 1898. Shortly thereafter he commenced negotiations for a settlement with his creditors. His commercial creditors agreed to take fifty cents on the dollar in full settlement of their demands provided the bank would accept sixty per cent in full of its demands. The bank was solicited to accept such a compromise and composition and on the 3rd of March, 1898, the note and mortgage sued on were first executed in the name of Richard Avey. It was attempted to be shown on behalf of the plaintiff that its execution and delivery was in consideration of a loan by Richard Avey to the defendant Pettyjohn, and some evidence was introduced showing that a check of Richard Avey was at the time delivered by Mr. Wheeler to Mr. Everest. When, where and how this check came into existence is not shown. It was never delivered to Mr. Pettyjohn, nor was the amount of it credited to Mr. Pettyjohn on his indebtedness to the bank, nor does it anywhere appear on the books of the bank. Pettyjohn had never seen Mr. Avey, did not know him, and had never solicited any loan from him. The check therefore furnished no consideration for the execution and delivery of the note and mortgage in question. Avey endorsed the note

to Mr. Wheeler, the intervenor, who having full knowledge of all its infirmities, did not receive it as an innocent purchaser. Mr. Wheeler did not receive it in satisfaction at that time of any portion of the bank's demand against Pettyjohn, but delivered it to Mr. Everest, who put it in his safe and allowed it there to remain until Pettyjohn had prepared to settle with his creditors by the loan from Wilkin. It will thus be seen that this note from the time of its execution to the date of the final confirmation of the composition was without consideration, and therefore incapable of enforcement against Pettyjohn or his property, and this infirmity in the note was not afterwards cured by any consideration moving to Pettyjohn in consideration therefor.

Its execution was some considerable time prior to the date of closing the composition among creditors. At the time, however, that Pettyjohn made the loan from Wilkin to settle the composition, Everest demanded a re-execution of the note and mortgage by Pettyjohn, who, taking the note and mortgage for the purpose of examination, destroyed them, and was in turn arrested on complaint of Everest, charged with the larceny thereof. To avoid this arrest he re-executed the note and mortgage. This transaction gave to the instrument no new life. It was void for want of consideration when first executed, and equally void when re-executed, and in addition was void because of the duress in securing its re-execution and no right of action could legally be founded thereon.

The testimony of Pettyjohn, and the finding of the jury that the note sued on by the plaintiff was executed in consideration of a promise by plaintiff to furnish the money

to perfect the composition, does not aid the question of consideration, for the reason that the plaintiff, after the execution and delivery of the note, wholly failed and refused to carry such promise into effect, by reason whereof defendant was compelled to borrow from Wilkin the money necessary to finally carry out his composition.

The conclusion here reached disposes of this case without a consideration of the error complained of in the two instructions mentioned in plaintiff's brief. Such error, if there was any, is immaterial. This court will not reverse a correct conclusion because of an error committed in reaching it. Such error must be held to be immaterial. The error contended for is not one of law, but grows out of a contention as to what the evidence was. A correct conclusion having been reached in the trial of the cause, the judgment of the court below must be affirmed with costs.

Burwell, J., who tried the case in the court below, not sitting; Burford, C. J., absent; all the other Justices concurring.