## ENID ELECTRIC & GAS CO. v. DECKER.

No. 1674.    Opinion Filed September 17, 1912.

Rehearing Denied December 17, 1912.

(128 Pac. 708.)

1.    **MASTER AND SERVANT**—Injuries to Servant—Actions—Pleading.   In an action for personal injuries caused by negligence, a petition which shows plaintiff's employment and of what his duties. consisted; shows the character of the machinery and appliances which it was his duty to assist in operating; alleges their defective nature and shows wherein they are defective; alleges that he was acting under orders of his superior when the injuries were received; charges negligence in the use of such defective machinery and the giving of the orders by obeying which he received the injuries; shows the nature and extent of the injuries and that they were the result of the alleged negligence; alleges the damages sustained and that he has not been compensated for same—states a cause of action.

2.    **ACTION**—Joinder of Causes—Torts.   In an action for personal injuries, all the acts of negligence which, operating together, caused the injury complained of, may be alleged in the same paragraph of the petition, and by being so alleged do not constitute a misjoinder of different causes of action.

3.    **APPEAL AND ERROR**—Review—Questions of Fact—Sufficiency of Evidence.   The judgment of a trial court will not be reversed for refusal to set aside a verdict of a jury and grant a new trial, where the evidence reasonably tends to support the verdict.

4.    **RELEASE**—Requisites and Validity—Fraud—Duress.   In an action for personal injuries caused by negligence, where the defendant alleges and sets up a contract of settlement and release, the plaintiff will not be bound by such release where the evidence shows it was procured by fraud, duress, or intimidation.

Enid Electric & Gas Co. v. Decker.

.5.   **MASTER AND SERVANT**—Injuries to Servant—Questions for Jury. In determining the question of assumption of risk, the questions whether the plaintiff was inexperienced or ignorant of the dangers incident to his employment, or whether he was acting under his master's orders, or whether, if so acting, the danger was so apparent that he should have refused to obey them, are questions of fact, for the jury, to be determined from the evidence.

'6.   **SAME**—Duty To Warn Servants. It is the duty of the master to warn his servants of new or increased dangers caused by a change in his machinery, appliance, or place or method of work, and he will be held liable for injuries resulting from his neglect of duty in this respect.

'7.   **APPEAL AND ERROR**—Review—Questions of Fact—Sufficiency of Evidence. Where the question of defendant's negligence has been submitted to the jury under proper instructions, the jury finds defendant guilty of negligence, and such verdict is reasonably supported by the evidence, this court will not reverse the judgment of the trial court for refusal to set aside the verdict and grant a new trial.

:8.   **TRIAL**—Instructions—Requests—Instructions Already Given. It is the rule of this court that a judgment will not be reversed because of refusal of the trial court to give requested instructions, where the questions of law contained in such instructions are fully presented in the court's charge.

(Syllabus by Harrison, C.)

*Error from District Court, Garfield County;*
*M. C. Garber, Judge.*

Action by Chester A. Decker against the Enid Electric & Gas Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This action was begun April 3, 1909, in the district court of Garfield county, by Chester A. Decker against the Enid Electric & Gas Company, for damages caused by the explosion of an oil tank on the night of December 28, 1908. The company answered by general denial and by pleading contributory negligence and assumption of risk, and further pleading settlement in full with plaintiff for the injuries received. Plaintiff replied, denying the allegations of negligence and assumption of risk, and alleging that the contract of settlement alleged by defendant was procured through fraud, duress, and intimidation, and that plaintiff was mentally and physically incompetent and unable to protect his

interests in the premises at the time the alleged settlement was made and contract procured.

The facts are: That for about eight days previous to the time of the accident the defendant company had been using crude oil as fuel in running its power plant, previous to which time it had been burning coal and was using coal in two of its engines at the time of the accident. That plaintiff had been employed by defendant as fireman some fifteen or eighteen months prior to the accident. That the tank in which the oil was kept was a tank which had previously been used as a gas tank. That on the night of the injury the pumps got out of order, or at least failed to pump the oil from the tank into the engine. That plaintiff was directed by the engineer in charge on that night to examine the tank and see whether or not the oil was getting low. That it was dark, and the plaintiff and an assistant by the name of Jones procured a lantern and went to examine the tank; Jones holding the lantern, and plaintiff opening the tank. That in doing so the lantern caused the gas which was escaping from the tank to explode, in which explosion the plaintiff was badly burned about the face, head, arms, hands, and back, and one of his ears partly burned off. That from these injuries he was confined to his bed for about 30 days, during which time he suffered intensely and was permanently disfigured and maimed by the burns.

In November 1909, the issues were tried, resulting in a verdict in favor of plaintiff in the sum of $3,500. Motion for a new trial was overruled and judgment rendered. From which order and judgment the defendant company appeals upon nine assignments of error.

*Robberts & Curran,* for plaintiff in error.

*Huett & Chappell,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). The first contention, of plaintiff in error is that the court erred in overruling defendant's demurrer to the petition; the grounds of the demurrer being: First, that the petition failed to state facts sufficient to constitute a cause of action. Second,

that several causes of action are improperly joined.  We cannot agree with counsel that the petition fails to state a cause of action.  It alleges the plaintiff's employment and of what his duties consisted under same; shows the character of the machinery and appliances which it was his duty to assist in operating; alleges their defective nature and shows wherein they were defective; alleges that he was acting under orders of his superior when the injuries were received; charges negligence in the use of such defective machinery and in the giving of the orders by obeying which he received the injuries; shows the nature and extent of the injuries and that they were the result of the alleged negligence; shows the damages sustained and that he has not been compensated for same.  This, we think, is sufficient under our rules of pleading.

"Accordingly, a declaration specifying the act, the commission or omission of which caused the injury (stating such act with a reasonable degree of particularity), and averring generally that it was negligently and carelessly done or omitted, will suffice."  (14 Pl. & Pr. 334.)

Nor can we agree that several causes of action are improperly joined in the petition.  The petition does not attempt to state more than one cause of action.  The plaintiff merely alleges the different acts of negligence which, operating together, caused the injury.

"All the different acts of negligence on the part of the defendant which caused the injury may be alleged in one paragraph."  (29 Cyc. 565.)

"Several acts of negligence of the same nature and all of which may be true, and either of which or all of which together may have caused the accident, may be pleaded in one count."  (*Haley v. Missouri Pacific Ry. Co.*, 197 Mo. 15, 93 S. W. 1120, 114 Am. St. Rep. 743.)

Hence, we do not think the court erred in overruling the demurrer.

In the second and third contentions it is argued that the court erred in refusing a new trial.  In the second, it is claimed that there was not sufficient evidence supporting the allegations of fraud and duress in procuring the contract of settlement.  In

the third, it is claimed that, under the evidence, the plaintiff knew, or should have known, of the danger of his act in looking into the tank, and by so doing assumed the risk of· the incident dangers. As to the contention that the evidence did not support the allegations of fraud and duress, and that the court erred in not granting a new trial on this ground, we cannot say as a matter of law that the court erred in this ruling. The evidence on this point was before the jury, and the law on the question was very fully and properly submitted to the jury under instructions prepared and offered by counsel for defendant, and from the record we do not agree with counsel that the evidence does not reasonably tend to support the jury's finding. It shows that the plaintiff had been confined to his bed for more than 30 days; that the flesh and skin had fallen off of a portion of his scalp, a portion of his ear had been burned off, and that his hands and arms and back had been badly burned; that during a great portion of the period of his confinement he had been irrational; that his sufferings had been intense; that the day of settlement was the first time he had been able to get out of the house; that he was very weak and· emaciated and hungry, and was still suffering on this day; that over his objections and protestations of weakness and desire to return home, he was induced to get into the doctor's buggy and go with the doctor to the office where the settlement was procured, in which settlement the doctor received a check for $125 and the plaintiff one for $70.

As to his condition, the plaintiff testified:

"Q. Now, Decker, tell this jury whether or not you knew what you were doing and understood the nature and purport of that agreement. A. No, sir; I did not. I did not understand it; I did not. Q. What was your condition as to being weak or strong? A. Well, I was weak. Q. What was the condition of the sores and injuries that were upon you at that time? A. Well, my ear was still sore. It had a big scab on it, and my arm was still sore yet, and my hands were sore. My left hand was all scabbed up. Q. Had you anything to eat that day? A. No, sir; I did not, had no breakfast or no dinner. Q. When was it with the relation to this time, or how soon after that, was it that you learned that they claimed you had signed a release? A. Well, it was when I got home. Q. It was when you got home? A. Yes,

sir. Q. State to the jury now, as you remember it, just why you signed this contract. A. Well, I was weak and hungry and was scared at what Zeck had said, and they said they had given Pearl something to eat off of, and if I would sign it that I could get something to eat off of. Q. Well, was you afraid of what Zeck had said? A. Well, I didn't know but what they would fine me $3,000. Q. Did Zeck say anything about it this time? A. Yes, sir; he did. Q. Well, tell us what he said. A. Zeck said that I was liable to a fine of $3,000 for waste of oil and tearing up the machinery around there."

The doctor also, in answer to the question as to whether or not plaintiff was competent to transact business, said: "No, I do not say that he was."

The witness Rice, who was at plaintiff's house on the evening after plaintiff's return from the settlement, testified:

"Well, he seemed to be childish. He was just like a child. He would get in a corner and didn't have much to say after he had signed it. Why he did not—he acted like a kid that had done something wrong, and he knew he had done wrong, and he did not have much to say about it, and he could not tell why he signed it, and he could not tell why he signed it or anything about it. Q. Could he tell what it was? A. No, sir; he could not."

The jury had this as well as other testimony and circumstances before it, and under this testimony and the surrounding circumstances we do not feel justified in saying that such evidence did not reasonably tend to support their finding, nor in saying that the court erred in refusing to set aside such finding.

The doctrine that releases of this character, when procured by fraud or intimidation, will not be sustained by the courts, is exhaustively discussed and well settled by this court in *St. Louis & San Francisco R. Co. v. Richards*, 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, and authorities therein cited.

Also, as to the contentions that under the evidence the plaintiff had knowledge of the danger incurred in examining the tank, and therefore assumed the risk, and that the court erred in not granting a new trial on this ground, we think a new trial on this ground was properly refused.

The evidence showed, or at least reasonably tended to show, that the plaintiff had no knowledge whatever of the fact that gas would accumulate in the oil tank, or of the danger he was incurring by examining it. It shows that he was new in this business; that the company had been using oil only about eight weeks, previous to which time they had used coal; that plaintiff had no experience in the use of oil previous to this time and was not aware of its dangerous character from the accumulation of gases in the oil tank. It shows also that neither the man Jones, who was injured at the same time, nor the assistant engineer in charge on that night, knew or realized the danger they were incurring. It shows that, although the chief engineer knew of the accumulation of gas and of the dangers incident, yet he had never informed plaintiff of same, nor warned him of the danger, although it was a part of plaintiff's employment to look after the tank and the pumping machinery. The evidence also tends to show that plaintiff and Jones went to examine the tank (Jones taking the lantern) in obedience to the orders of the assistant engineer, and that it was plaintiff's duty to obey the orders of the assistant. It also shows that the tank had not been built for the purpose for which it was being used, and was unsuitable for such purpose; that it had not been provided with sufficient escapes for the accumulating gases; that the superintendent of the plant had been repeatedly warned by the chief engineer that the tank was unsuitable and dangerous; and that plaintiff was not aware or had not been informed of the unsafe condition of the tank. It also shows that these dangers were not of such character as to be reasonably apparent, or at least apparent to one who knew nothing of the use of crude oil as fuel or of the defective construction of the tank in which it was kept.

It is contended that the dangers incident to the use of crude oil as fuel are matters of common knowledge, and that the court should have taken judicial knowledge of same and charged the plaintiff with knowledge of the dangers incident to his employment. We cannot concede this to be the law, where plaintiff affirmatively alleges that he had no knowledge of the dangers incident to his duties.

"The court will not assume knowledge where the petition alleges ignorance of the defects." (*Bedford Belt Ry. Co. v. Brown,* 142 Ind. 659, 42 N. E. 359.)

It is also held in *Pittsburgh Ry. Co. v. Parish,* 28 Ind. App. 189, 62 N. E. 514, 91 Am. St. Rep. 120:

"Where the defect was not so open and obvious that as a matter of law plaintiff was chargeable with knowledge thereof and the danger therefrom, a demurrer to a complaint alleging that plaintiff had no knowledge of the defects admits the truth of such allegation. Assumption of risk is sufficiently negatived where it is alleged that the servant was inexperienced or youthful, that he did not know or appreciate the dangers to which he was exposed, and that the master, knowing these facts, failed to warn or instruct him as to the dangers of his employment." (26 Cyc. 1399.)

The question of assumption of risk in the case at bar rests upon the following questions of fact, viz.: First, whether plaintiff was inexperienced or was ignorant of the dangers. Second, whether he was acting in obedience to the engineer's orders. Third, whether, under the circumstances, if he was acting under orders, the danger was so apparent that he should have refused to obey them. These were questions of fact for the jury, to be determined from the evidence. There was an issue as to the existence of each fact and the testimony more or less conflicting.

On the question of ignorance or inexperience of the employee, the law is well stated in *Millen v. Pacific Bridge Co.,* 51 Ore. 549, 95 Pac. 198, wherein the court said:

"The doctrine of the assumption of the risk is wholly dependent upon the servant's knowledge, actual or constructive, of the dangers incident to his employment. Where he knows, or in the exercise of reasonable and ordinary care should know, the risk to which he is exposed, he will as a rule be held to have assumed them; but where he does not know, or knowing does not appreciate, such risk, and his ignorance or nonappreciation is not due to negligence or want of due care on his part, there is no assumption of the risk."

On the question as to whether he was acting under orders of the engineer, there was but little material conflict in the testimony, and, as the jury had it all before them and determined upon its weight, we do not feel authorized in saying their con-

clusion should be set aside. The question of plaintiff's duty to obey the orders of his master depended in this case upon the surrounding circumstances, including the plaintiff's inexperience, his ignorance of the latent, though dangerous, defects of the tank, and whether such dangers were so apparent that a person of ordinary prudence and understanding would, under the circumstances in which the plaintiff was placed, have foreseen them.

In *Withiam v. Tenino Stone Quarries,* 48 Wash. 127, 92 Pac. 900, it is held:

"Where a servant was injured as a result of obeying his master's command, and reasonable minds might differ as to whether the danger in performing the act commanded was so imminent that a man of average prudence would have refused to obey, the verdict of a jury thereon is conclusive; and it is error to set aside and render judgment *non obstante veredicto.*"

The facts in the above case were: The plaintiff was standing on a scaffold. He was handed a hammer and told to knock a brace loose from the scaffold. He knocked the brace loose and handed the hammer back, and in attempting to step from the scaffold through a window into the building the scaffold fell, resulting in the injury for which plaintiff sued. In stating the facts in the case the court said:

"The act of the foreman in directing the plaintiff to knock the brace loose is the sole ground of negligence charged in the complaint."

In the trial of this case the issues of negligence and contributory negligence were raised and presented to the jury. The jury returned a verdict in favor of plaintiff. The court, on motion of defendant, directed a judgment in defendant's favor, notwithstanding the verdict. In reversing this judgment, Justice Rudkin, who rendered the opinion, quotes the rule from Labatt on Master & Servant, and, after citing many other authorities in support of the rule, concludes as follows:

"The only question in this case, therefore, is: Was the danger so apparent and imminent that a man of average prudence and intelligence would have refused to obey the master's command? The master, of course, is not now estopped to claim that the act

of the servant was foolhardy and reckless; but, in view of his previous command, such a defense should be viewed with some suspicion and scrutinized with care. It is reasonable to assume that neither the appellant nor the foreman deemed the act overhazardous at the time, and evidently the jury did not so consider it. It seems to us that reasonable minds might well differ as to the danger that might result from the act which the appellant was directed to perform, and in such cases the jury's verdict is conclusive on the court, in so far as its right to direct a judgment is concerned."

It might be well in this connection to consider also the duty of the master to warn his servants of such dangers as are likely to arise from the use of new machinery and appliances of which the servants have no knowledge.

In 26 Cyc. 1169, the rule is stated:

"It is the duty of the master to warn his servants of new or increased dangers caused by a change in his machinery, appliances, or place or method of work, and he will be held liable for injuries resulting from his neglect of duty in this respect."

In *Elliff v. Ore. R. & Nav. Co.*, 53 Ore. 66, 99 Pac. 76, the court said:

"When the hazard attending the usual exercise of any work, required of an inexperienced laborer, is not apparent, it is incumbent upon the master to inform him of the danger ordinarily incident to the service, and, if in consequence of any failure in the performance of his duty the servant is injured, the master is liable in damages for the neglect."

In *Bowers v. Star Logging Co.*, 41 Ore. 301, 68 Pac. 516, it is said:

"It is the duty of the master not to expose an inexperienced servant and one unfamiliar with the employment and risks attendant thereon to a dangerous service, without giving him warning of the danger and instructions how to avoid it. * * *"

In *Viohl v. North Pac. Lumber Co.*, 46 Ore. 297, 80 Pac. 112, the court, in discussing the question of assumption of risk in obeying the orders of the master, said:

"Where, as in this case, a servant is called upon to execute an order requiring prompt attention and haste, he is not conclusively presumed to remember a defect in the machinery, or a particular danger connected with his work. 'A prompt and faithful employee,' says the Supreme Court of Pennsylvania in *Lee*

*v. Woolsey,* 109 Pa. 124, 'suddenly called upon by a superior to do a particular act, cannot be supposed to remember at the moment a particular danger incident to its performance, of which he had previous knowledge; and it would be most unreasonable to demand of him the thought and care which might be exacted where there is more time for observation and deliberation.' Whether in such a case the injured party was guilty of contributory negligence is a question of fact, and not one of law. Indeed, in an action against a master to recover damages for an injury to a servant due to the negligence of the former, the question of contributory negligence on the part of the injured party is ordinarily a question of fact in all cases. * * * That the servant exposed himself to dangers which could have been avoided imports negligence only when they were of such a character that a man of ordinary prudence and caution would have refused to have incurred them in the performance of his duties, and these are ordinarily questions of fact, and not of law. Beach, Contri. Neg. (3d Ed.) sec. 450; I Labatt, Master & Servant, sec. 322."

Section 6, art. 23, of the Constitution of Oklahoma, provides:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

The foregoing questions, together with the question of defendant's negligence, were submitted to the jury under proper instructions by the court. In reaching a verdict the jury had before them all the evidence, facts, and circumstances surrounding the case, and having reached a verdict from the evidence before them, inasmuch as the verdict is reasonably supported by the evidence, we cannot say as a matter of law that it should be set aside, nor that the court who had heard the same evidence committed error in refusing to set it aside.

As to the contention that the court misdirected the jury in matters of law, we think the law was fairly and fully stated in the court's instructions, and that there was no material error in the charge given nor in the court's refusal to give those offered by defendant. The points covered in the refused instructions were reasonably well covered in the instructions given by the court. It is the well-settled rule of this court that a judgment will not be reversed for refusal to give offered instructions where the same

questions of law are covered by the court's charge. Nor do we think there was any material error committed in the admission or rejection of testimony.

It is our opinion that the judgment of the lower court should be affirmed.

By the Court: It is so ordered.