## HARRIS-LIPSITZ CO. v. OLDHAM *et al.*

No. 6440.    Opinion Filed February 29, 1916.

(155 Pac. 865.)

1.    PROCESS—Service by Publication—Affidavit—Sufficiency. Where it is stated, in an affidavit to obtain service by publication, that defendant is a nonresident of the state, and service cannot be had on him in the state, and such affidavit is otherwise sufficient, such affidavit is sufficient, notwithstanding facts are not stated therein showing that plaintiff, by the use of due diligence, was unable to make personal service in the state upon defendant.

2.    CANCELLATION OF INSTRUMENTS—Petition—Offer to Do Equity. In a petition for rescission of a contract, upon the ground of duress and want of consideration, it is not necessary for plaintiff to offer to do equity.

3.    SAME—Deeds—Duress—Want of Consideration—Sufficiency of Evidence. The evidence carefully weighed, and the weight thereof found to sustain the facts found by the court—that the deed sought to be canceled was obtained by the exercise of duress and without consideration.

4.    SAME. Under the weight of the evidence, the conclusion of law reached by the court—that the deed in question should be canceled —is correct.

(Syllabus by Collier, C.)

*Error from District Court, Coal County;*
*Robert M. Rainey, Judge.*

Action by N. Y. Oldham and another against the Harris-Lipsitz Company.    Judgment for plaintiffs, and defendant brings error.    Affirmed.

*Fooshee & Brunson,* for plaintiff in error.

*C. M. Threadgill,* for defendants in error.

Opinion by COLLIER, C.    This action was commenced by defendants in error against plaintiff in error, to cancel and set aside a deed, executed by defendants in

error to plaintiff in error.    Hereinafter the parties will be designated as they were in the trial court.

Defendant being a nonresident of this state, service of summons was had upon it by publication.    The affidavit for publication, omitting caption, is as follows:

"N. Y. Oldham and N. M. Oldham, being first duly sworn, state upon their oaths that they are the plaintiffs above named; that they have commenced an action against the defendant to cancel a deed; that the said defendant is a corporation, incorporated under and by the laws of the State of Texas, and is a nonresident of the State of Oklahoma, and has no place of business in the State of Oklahoma, and has no agent for service in the State of Oklahoma, and cannot be served by process of this court in said State of Oklahoma.    Wherefore plaintiffs pray for service on the defendant by publication, as the law directs.

"N. Y. OLDHAM,
"N. M. OLDHAM."

Upon the filing of said affidavit, publication, omitting caption, was made as follows:

"Said defendant, Harris-Lipsitz Company, a corporation, will take notice that it has been sued in the above-named court to cancel a deed to lots numbered 9 and 10 in block numbered 32 in the town of Tupelo, Okla., and it must answer the petition filed herein by said plaintiffs on or before the 11th day of February, 1913, or said petition will be taken as true, and judgment for said plaintiff to cancel the said deed will be rendered accordingly.

"C. M. THREADGILL, *Attorney for Plaintiffs.*

"Attest:   C. L. CARDWELL, *Clerk of the District Court.*"

Proof of publication for the time required by law was duly made by the editor and publisher of the Coalgate Record-Register, the newspaper in which said publication was printed.    The evidence shows that the sons of plain-

tiffs had been engaged in the mercantile business, and become indebted to defendant; that the representative of defendant went to Tupelo, where plaintiffs resided, and saw one of plaintiffs, Mr. Oldham, in regard to said indebtedness of plaintiffs' sons to defendant. Mr. Oldham testified that said representative stated to him that he had quite a large sum of bogus notes that his boys had deposited with them for goods, and that they had to be redeemed; that he told said representative that he did not have anything to redeem them with, only his place; that defendant's representative proposed that plaintiffs give him a deed or mortgage on the place, and said representative proposed to deliver the notes over to plaintiffs and release the indebtedness due defendant by plaintiffs' sons; that witness got bothered, and asked for time to think about it; that said representative would not give it; said if they did not do it right then, he would have the youngest boy arrested. Afterwards the representative of defendant, together with a notary public, went to the residence of plaintiffs, and thereupon plaintiffs executed to defendant the deed which is sought to be canceled. Mrs. Oldham, the other defendant herein, testified that she signed the deed because she feared that if she did not do so they would put her boys in jail. Mr. Brunson testified that the representative of defendant threatened to him that unless the matter was arranged the boys would be prosecuted, and advised that the matter be settled and the collateral notes be burned up. Mr. Macey testified that the representative of defendant stated to him that unless Mr. Oldham would pay or put up stuff for the $1,300 that was owing by his sons to defendant, he was going to prosecute both of the boys, which statement of said representative of defendant witness communicated to Mr. Oldham, prior

to the execution of said deed.  It is further shown by the evidence that the wife of one of the sons of plaintiffs also arranged to secure one-half of said indebtedness owing by plaintiffs' sons to defendant, and that to her was turned over the collateral notes held by defendant.  The evidence is in conflict as to whether or not Mr. Oldham, one of plaintiffs, ever directed that the collateral notes held by defendant be turned over to the said wife of plaintiffs' son.  There was also evidence in conflict with the statements of the several witnesses as to threats being made by the representative of defendant.  The case was tried to the court, and a decree rendered in favor of plaintiffs cancelling the deed and removing cloud from the title to said lots.  Motion for new trial was filed, overruled, and exceptions saved.  To reverse said judgment, this appeal is prosecuted.

There are numerous assignments of error, but the only ones argued in the brief are the first, second, seventh, and eighth, and these are the only ones that will be considered, and they will be reviewed in reverse order.

The affidavit made for publication of service of summons, we think, was sufficient, as also was the notice of publication.  Consequently the court did not err in overruling the motion of defendant to quash the service by publication.  In *Ballew v. Young et al.,* 24 Okla. 182, 103 Pac. 623, 23 L. R. A. (N. S.) 1084, it is held:

"Where it is stated, in an affidavit to obtain service by publication, that a defendant is a nonresident of the state, and service cannot be had upon him within the state, and such affidavit is otherwise sufficient, it is not void or voidable because facts are not stated therein showing that plaintiff, by the use of due diligence, was unable to make service of summons upon the defendant."

See, also, *Richardson v. Howard*, 51 Okla. 240, 151 Pac. 887.

It is true that he who asks equity must do equity. Where one seeks rescission of a transaction, he must restore the *status quo*. But we are unable to agree with the contention of defendant that plaintiffs should have offered in their petition to restore said collateral notes to defendant. In a suit in equity. to cancel and annul a deed, on the ground of fraud, it is not necessary to formally allege in the petition therefor an offer to do equity. *Washington v. Colvin*, 55 Okla. 774, 155 Pac. 251; *Stevens v. Elliott*, 30 Okla. 41, 118 Pac. 407. While, under section 986, Rev. Laws 1910, a party seeking a rescission must restore to the other party everything of value which he has received from him under the contract, the weight of the evidence shows that the collateral notes were of no value, and that defendant's representative advised that they be burned. The evidence is in conflict as to whether or not Mr. Oldham, one of plaintiffs, directed said collateral notes to be delivered to the said wife of his son, to whom they were delivered; and the uncontradicted evidence is that neither of plaintiffs received anything of value from defendant as consideration for the deed. Consequently the court did not err in not requiring plaintiffs to restore the collateral notes as a condition precedent to the judgment in this case.

We have carefully weighed the evidence, and are satisfied that the deed executed by plaintiffs to defendant was executed under duress and without consideration. That a deed executed under duress and without consideration should be set aside is too well settled to require citation of authorities in support thereof. We think that it would be a difficult matter to find a more effective way to bring

about the conveyance secured in this case, without consideration, than was practiced. Threats to cause to be imprisoned the sons of the aged father and mother made a test of their affection for their boys, which placed plaintiffs in a position to be willing to make any sacrifice rather than have their boys branded as felons, and hence to deed away their home—the only property they had—without consideration moving to them.

The finding of fact by the court, that the deed was executed under duress and without consideration, we think is amply supported by the evidence; and the conclusion of law reached by the court, that the deed should be canceled, is free from error.

It follows that there was no prejudicial error in overruling the motion for new trial. The judgment of the trial court should be affirmed.

By the Court:   It is so ordered.