## ANDERSON v. KELLEY *et al.*

No. 6678.   Opinion Filed April 5, 1916.

(156 Pac. 1167.)

1.   **PLEADING—Demurrer to Evidence—Effect as Admission.** A demurrer to the evidence admits the facts which the evidence tends to establish, and all reasonable inferences of fact favorable to the demurree naturally arising therefrom.

2.   **CONTRACTS—Mortgages—Validity—Duress.** The free consent of the parties and the voluntary meeting and blending of their minds is essential to the validity of a contract, and a contract executed

as a result of duress or menace is voidable. Where, solely by reason of threats made for that purpose, parents are impelled, through fear of impending imprisonment of their son, to execute a note and mortgage, evidencing and securing the debt of the son, such instruments may be avoided on the ground of menace.

3.    **APPEAL AND ERROR—Equity—Advisory Verdict—Instructions.** In cases of equitable cognizance, while questions of fact may be submitted to a jury, its verdict is merely advisory, and may be adopted or rejected by the court, whose duty it is ultimately to determine all questions, both of fact and law, and alleged errors in instructions to the jury in such case afford no ground for review upon appeal.

4.    **MORTGAGES—Foreclosure—Defense — Duress — Sufficiency of Evidence.** Evidence examined and **held** to sustain the judgment.

(Syllabus by Bleakmore, C.)

*Error from District Court, Major County;*
*James B. Cullison, Judge.*

Action by A. W. Anderson against Alva W. Kelley and another. Judgment for defendants, and plaintiff brings error. Affirmed.

*D. H. Denman, Nicholas & Lyle,* and *R. H. Towne,* for plaintiff in error.

*Harry Randall* and *Brady & Willis,* for defendants in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Major county by A. W. Anderson to recover against Alva W. Kelley and Maggie Kelley on a promissory note for $782.51 payable to plaintiff, and to foreclose mortgage on their homestead and other lands given to secure the same. One W. E. Burrell was permitted to intervene and assert his rights under a prior mortgage upon a portion of said property. Upon trial it was agreed that his was the first mortgage, and judgment should be rendered in his favor accordingly. As to the note and mortgage declared on by plaintiff, de-

.fendants answered that the same were without consideration, and were—

"obtained through fraud, menace, duress and threats of criminal prosecution against the son of these defendants by the plaintiff and his duly authorized agent, I. D. Arrington, in the following manner:   That on the 14th day of November, 1910, the said I. D. Arrington came to the place of the defendants, who are aged people, in Major county, Okla., and represented and stated to these defendants that their son, Ralph Kelley, and the partner of said Ralph Kelley, to wit, one Jennings, had disposed of mortgaged property and obtained money under false pretenses, and that he then had said parties under his control under arrest for said offenses; that said Ralph Kelley and said Jennings were with said I. D. Arrrington, and the said I. D. Arrington then and there represented to these defendants that he was a duly authorized deputy sheriff of Woodward county; that the said Ralph Kelley would be prosecuted and sent to the penitentiary for the crimes the said Arrington informed defendants that he had committed.   *   *   *"

Defendants, husband and wife, were at the time of trial 73 and 64 years of age, respectively, and the wife, being illiterate, signed the instruments in suit by mark. A son of defendants, Ralph Kelley, and one Jennings, who was in no way related, had jointly executed a mortgage of personal property, including crops of broom corn, etc., some of which was sold and a portion remortgaged by them without the consent of the mortgagee.   Certain of the creditors of Ralph Kelley and Jennings procured plaintiff, an attorney and manager of the Southwestern Mercantile Company of Woodward, to represent them.   One Arrington was employed by plaintiff as a collector in the matter.   Thereafter, about 7 o'clock in the evening of November 11, 1910, Arrington, accompanied by Ralph

Kelley and Jennings, appeared at the home of defendants in Major county, where certain notes and a mortgage on the lands owned by them, including their homestead, were executed by defendants to plaintiff, two days subsequent to the making of which, for the ostensible purpose of correcting a mistake in the description of the lands covered thereby, the instruments in suit were given. Relative to the transactions involved, the defendant A. W. Kelley testified:

"A. When they came in the store, my son, Ralph Kelley, introduced Mr. Arrington to me as Mr. Arrington, deputy sheriff of Woodward county, Okla. Q. Now, then, just go on, Mr. Kelley, and state to the court just what happened. Just state what was said and done there at that place at that time. A. Yes. As I said, when they came into the store, my son, Ralph Kelley, introduced Mr. Arrington to me as Mr. Arrington, deputy sheriff of Woodward county, Okla., and Mr. Arrington said to me: 'I would like to see you, Mr. Kelley, just a little bit on business. I am sorry to break it to you.' We stepped to the back end of the store. I said: 'All right.' He said: 'Your boy, Ralph, has got into trouble, and I felt sorry for him, for I believe he is a good, straight, honest boy, and I don't think that he would have got in the trouble if it hadn't been for Mr. Jennings. I went down and arrested the boys, and brought them up to Woodward, and I asked Ralph if he had anybody that he thought would help him out, if he had any parents, and he told me he had. So, I voluntarily brought him over here to see you, if you would help him out.' I said: 'What criminal offense has he done?' He said: 'He has sold mortgaged property and remortgaged it, and it will send him to the penitentiary. Mr. Kelley, I don't want to see your boy go there, and I don't think you do.' I said: 'Oh, no; I don't. But how could I fix this up?' He said: 'It could be fixed up by you going their security and fix this up with those

men over at Woodward. They are fine men.' I said: 'What kind of security would you want?' He said: 'A mortgage on real estate.' I said: 'My real estate is all mortgaged.' He said: 'Well, we will take a second mortgage.' So I studied about it a little while, and it was getting late, and I said: 'Well, tonight, I will talk to my wife about it and see what she says about it.' Q. Then, go on and state what was done and said. A. I told him that he could stop a quarter of a mile south of me, and he starts out and he said: 'Come on, Ralph.' I said: 'Mr. Arrington, let Ralph go down with me. I will be responsible for him and bring him up here in the morning, as I agreed to meet you. He hasn't saw his mother for quite a long while.' He said: 'All right. then.' So we went down home. I didn't see him again until the next morning. I related the circumstances to the woman and told her how it was and what he said and represented, and I asked her what to do about it, and she said to 'sign it.' She said that, and she says: 'I would rather lose the whole farm than to have one of my children go to the penitentiary.' * * * Q. When your wife came up there, what was done and said by Mr. Arrington and you and the others who were there? A. Mr. Arrington turned the papers around to her, and he said: 'Mrs. Kelley, you just sign this mortgage. This is to keep your boy from going to the penitentiary.' "

With regard thereto Maggie Kelley also testified:

"Q. State whether or not he represented to you that he was an officer, the sheriff or deputy sheriff. A. Yes, sir; he said he was the sheriff when he brought the boys there. Q. What was the reason he gave for wanting you to sign these notes and mortgage? A. Why, to save my boy from going to the penitentiary is what he wanted me to sign them for. Q. Did you receive any consideration whatever for signing these notes and mortgage? A. No; I just signed them because I thought it would save my boy."

The question of duress was submitted to a jury, which returned a verdict for defendants. The court adopted such verdict, made findings of fact consonant therewith, and rendered judgment accordingly.

Plaintiff assigns as error: (1) The overruling of his demurrer to the evidence on behalf of defendants; (2) the refusal of the court to set aside the verdict and render judgment for him; (3) errors of law occurring at the trial.

The demurrer to the evidence was properly overruled. A demurrer to the evidence admits the existence of all facts which the evidence tends to establish, and all reasonable inferences of fact naturally arising therefrom favorable to the demurree. *Crow v. Crow,* 40 Okla. 455, 139 Pac. 122.

By Rev. Laws 1910 it is provided (section 900) :

"Duress consists in:

"First. Unlawful confinement of the person of the party, or of husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband or wife.

"Second. Unlawful detention of the property of any such person; or,

"Third. Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly, harassing or oppressive."

Section 901:

"Menace consists in a threat:

"First. Of such duress as is specified in the first and third subdivisions of the last section."

In *Piekenbrock v. Smith et al.,* 43 Okla. 585, 143 Pac. 675, a case wherein defendants charged that the note and

mortgage sued on were executed as the result of menace and threat of imprisonment, it was held:

"The question in each such case is: Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of that quality of mind essential to the making of a contract, and was the contract thereby obtained?"

In *Galusha v. Sherman*, 105 Wis. 263, 277, 81 N. W. 495, 500, 47 L. R. A. 417, 423, it is said:

"The making of a contract requires the free exercise of the will power of the contracting parties, and the free meeting and blending of their minds. In the absence of that, the essential of a contract is wanting; and if such absence be produced by the wrongful conduct of one party to the transaction, or conduct for which he is responsible, whereby the other party, for the time being, through fear, is bereft of his free-will power, for the purpose of obtaining the contract, and it is thereby obtained, such contract may be avoided on the ground of duress. There is no legal standard of resistance which a party so circumstanced must exercise at his peril to protect himself. The question in each case is, was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained?"

In *Harris-Lipsitz Co. v. Oldham*, 56 Okla. 124, 155 Pac. 865, a suit to cancel as voidable on the ground of duress a deed executed by parents under circumstances similar to those in the present case, it was said by Collier, C., speaking for the court:

"We think that it would be a difficult matter to find a more effective way to bring about the conveyance secured in this case, without consideration, than was prac-

ticed.   Threats to cause to be imprisoned the sons of the aged father and mother made a test of their affection for their boys, which placed plaintiffs in a position to be willing to make any sacrifice rather than have their boys branded as felons, and hence to deed away their home— the only property they had—without consideration moving to them."

No arbitrary standard can be fixed in determining what in fact constitutes duress or menace in any given case, for what would accomplish that result in one instance might totally fail in another.   The means employed, the age and sex, physical condition, mental characteristics, and the environment of the complaining party are some of the matters which may properly be considered in determining the question.   In the instant case the indisputable facts are that the defendants were in no manner liable to plaintiff on their own account, legally or morally, but, on the contrary, by reason of the threats of the agent of plaintiff made for that purpose, were impelled to execute the note and mortgage in suit through fear of impending imprisonment of their son should they refuse.   The appeal, under such circumstances, to their parental love was sufficient to destroy in them any power of will to resist the demands of plaintiff's representative, and at his instance caused them to assume, not only the obligations of their own son, but those of a stranger, and in securing the same to incumber the accumulations of a lifetime and the home of their old age.   That their fears and affections were played upon in order to deprive them of the exercise of free will, and thus gain advantage over them to obtain their property, is obvious.   It will scarcely be contended that such methods of collecting a debt would be appropriate even as against a debtor guilty of a felony,

while their use to compel payment by innocent persons in no way responsible therefor must be regarded as reprehensible in the extreme. One who is aware that a crime has been committed should not be permitted to convert his knowledge into a source of profit to himself by the means employed in this case.

In *Williamson-Halsell-Frazier Co. v. Ackerman*, 77 Kan. 502, 94 Pac. 807, 20 L. R. A. (N. S.) 484, a case in which the controlling facts are practically identical with those considered here, and wherein a note and mortgage were set aside on the ground of duress, it is held:

"If the threats of the arrest and prosecution of the son operated to deprive the father of his free-will power and to constrain the execution of the mortgage, the actual guilt or innocence of the son upon the charge of embezzlement was not a material question in determining whether there was duress, and in charging the jury upon that defense it was not essential that the court should give a complete definition of the offense of embezzlement."

In the body of the opinion it is said:

"* * * Many cases may be found in the books where the threatened prosecution of a child amounted to duress of the parent. An illustration may be found in *Williams v. Bayley*, L. R. 1 H. L. 200, 35 L. J. Ch. 717, where bankers had acquired paper forged by a young man and had brought pressure upon the father to assume the payment of his son's obligations. The Lord Chancellor spoke of the pressure brought upon the father as of this nature: 'We have the means of prosecuting, and so transporting your son. Do you choose to come to his help, and take upon yourself the amount of his debts—the amount of his forgeries? If you do, we will not prosecute; if you do not, we will.' That is the plain interpretation of what passed. Is that, or is it not, legal? In my opinion, my Lords, I am bound to go to the length of saying that I do

not think it is legal.' Lord Westbury, in concurring in the judgment, said: 'The question, therefore, my Lords, is whether a father, appealed to under such circumstances to take upon himself an amount of civil liability, with the knowledge that, unless he does so, his son will be exposed to a criminal prosecution, with the certainty as a conviction, can be regarded as a free and voluntary agent. I have no hesitation in saying that no man is safe, or ought to be safe, who takes a security for the debt of a felon from the father of a felon under such circumstances.' 'A contract to give security for the debt of another which is a contract without consideration, is, above all things, a contract which should be based upon the free and voluntary agency of the individual who enters into it.' See, also, *City National Bank of Dayton v. Kusworm,* 88 Wis. 188, 59 N. W. 564, 26 L. R. A. 48, 43 Am. St. Rep. 880, and note." *Enid Electric & Gas Co. v. Decker,* 36 Okla. 367, 128 Pac. 708; *Hogan v. Leeper,* 37 Okla. 655, 133 Pac. 190, 47 L. R. A. (N. S.) 475; *Snyder v. Rosenbaum,* 215 U. S. 261, 30 Sup. Ct. 73, 54 L. Ed. 186 (affirming *Snyder v. Stribling,* 18 Okla. 168, 89 Pac. 222; *Wheeler v. Pettyjohn,* 14 Okla. 71, 76 Pac. 117.

The evidence, while conflicting, was ample to sustain the judgment.

Plaintiff further insists that there was reversible error in the charge of the court to the jury. Such contention is without merit. The established doctrine in this jurisdiction is that in a case of equitable cognizance, while questions of fact may be submitted to a jury, its verdict is merely advisory, and may be adopted or rejected by the court, whose duty it is ultimately to determine all questions, both of fact and of law; and alleged errors in instructions to a jury in such case afford no ground for review upon appeal. *Galer v. Berrian,* 43 Okla. 303, 104

Pac. 155.; *Kentucky Bank & Trust Co. v. Pritchett*, 44 Okla. 87, 143 Pac. 338, where authorities are collated.

It is also urged that, even if the note and mortgage were obtained by duress, the same were subsequently ratified by defendants. We are satisfied from the evidence that there was never any voluntary recognition by the defendants of the validity of the transaction in question.

An examination of the entire record convinces us that substantial justice has been done between the parties, and that the judgment should be affirmed.

By the Court: It is so ordered.